Filed 4/26/13  In re Mia H. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re MIA H., A Person Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FREDDIE H. et al., <br><br> Defendants and Appellants. | B241638 <br> (Los Angeles County <br> Super. Ct. No. CK87862) |

APPEAL from an order of the Superior Court of Los Angeles County, Marilyn Martinez, Juvenile Court Commissioner.  Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant Freddie H.

Kimberly A. Knill, under appointment by the Court of Appeal, for Defendant and Appellant Yvonne L.

John F. Krattli, Office of the County Counsel, James M. Owens, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

Yvonne L. (Mother) and Freddie H. (Father) appeal the order terminating parental rights under Welfare and Institutions Code section 366.26.[1] Appellants contend that their due process rights were violated when the juvenile court refused to hold a contested hearing. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the Department of Children and Family Services (DCFS) in January 2011, when Mother, Father, their daughter Mia, born in July 2009, and Mother's three older children fathered by Shaun K. were living in a motel room. All the children had head lice and the older children had missed two weeks of school. There were also reports of Mother spitting on Father and the children.[2] Further investigation revealed that Mother had been involved in dependency proceedings in Orange County and that the three older children had lived with their paternal grandmother (Shaun's mother) until two years earlier, when Mother regained custody.[3] In addition, Father's parental rights over three older children had been terminated in an Orange County proceeding in 2002. Both Mother and Father acknowledged criminal histories and use of drugs. Father had completed a drug program and reported being clean for more than three years. But Mother acknowledged using methamphetamine and marijuana recently, in January 2011 and December 2010 respectively. Voluntary family maintenance services were initiated. Mother agreed to voluntary placement of the three older children with their paternal grandmother. Mother and Father agreed to drug test and Mother agreed to enroll in a drug program and to obtain a mental health evaluation.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     This was of particular note because Mother reportedly suffered from hepatitis.

[3]     Mother had three additional older children, two of whom had been the subject of child protective services proceedings in Texas, who were no longer in her care.

2

Mother subsequently failed to appear for drug tests in April and failed to participate in a drug program. In May 2011, DCFS filed a petition under section 300. Because Father had appeared for drug tests and had consistently tested negative, at DCFS's recommendation the court placed Mia with Father. Mother was permitted monitored visitation only.

In July 2011, Mother and Father pled no contest to allegations that Mother had an unresolved history of drug abuse, including use of cocaine and methamphetamine, and that Father knew of Mother's drug abuse and failed to protect Mia.[4] The court ordered Mother to participate in a parenting program, substance abuse counseling with random drug tests, and mental health counseling including a psychiatric evaluation. She was granted monitored visitation, but Father was not to be the monitor. The court ordered Father to drug test on demand one time, to attend a parenting class if DCFS could find an affordable one that fit into his schedule, and to attend conjoint counseling with Mother if DCFS set it up and found a counselor who would not charge Father and meet in accordance with his schedule.[5] It also ordered family maintenance services for Father, Mia and Mother.

In August 2011, the caseworker learned that Mother had been staying with Father and babysitting Mia when Father was working. DCFS filed a supplemental petition under section 387 contending Father permitted Mother to have unmonitored access to Mia and failed to comply with court orders. Mia was

---

[4] Allegations pertaining to Shaun and the older children -- that Mother and Shaun had a history of domestic violence and engaged in physical altercations in the presence of the children, that Shaun had a history of illicit drug abuse and had failed to provide the children the necessities of life -- were found true at a later date. Shaun's children were not the subject of the order from which appeal was taken and he is not a party to this appeal.

[5] There is no evidence that DCFS was able to set up conjoint counseling for the parents.

3

detained from Father and placed with Shaun's mother, with whom her half-siblings had earlier been placed. Mother and Father pled no contest to the supplemental petition. The court ordered Father to attend a parenting class and permitted him to have unmonitored visits with Mia but kept in place the order that he not be the monitor for Mother's visits.

In October 2011, the caseworker reported that the parents had had no contact with her but had visited the children three times in the paternal grandmother's home in September and October. In addition, Mother called nightly to speak to the children. Mia had begun to adjust to the new home and bond with her caregiver. She showed no signs of distress when her parents left after their visits.

In the February 2012 status report, the caseworker again reported she had not spoken with the parents. She had visited a motel where they reportedly lived, but no one opened the door for her even though someone appeared to be inside. Father had been arrested for petty theft. The parents did not appear to be complying with the reunification plan. The parents had been visiting the children once or twice a month until mid-December. The visits went well. They had not visited in January or February. Mother had stopped calling the children nightly, and had called only three times in the preceding two weeks. Mia appeared to be happy in her new home, was very bonded with her half-siblings, and was beginning to seek out her caregiver for comfort. DCFS recommended termination of reunification services "[b]ased on the fact that both mother and father have long histories of substance abuse and neither parent has complied with court orders over the past 6 months, have not remained in contact with DCFS, have not visited minor in over two months, and due to minor being under the age of 3." At the review hearing on February 23, Father's attorney said he had been struggling financially and wait-listed for an inpatient drug program. Mother's attorney said she, too, was

4

on a waiting list for services. The court terminated reunification services and set a section 366.26 hearing for May 24, 2012 to consider termination of parental rights.

The caseworker's section 366.26 report was filed on May 24, 2012. The information concerning parental visitation was taken from the February 2012 status report. The caseworker had visited Mia in the home of the paternal grandmother and observed that she had formed a secure attachment to the grandmother and her husband, who were willing to adopt. Because the adoption home study had not been completed, however, DCFS recommended that the court continue the matter for 120 days to accomplish that task. At the hearing, the parents' attorneys asked that the matter be continued so it could be set for a contest. The court inquired whether parental rights could be terminated before the home study was completed. The attorney for DCFS stated that although DCFS was requesting a continuance of the section 366.26 hearing, DCFS did not disagree that termination was in Mia's best interest. The attorney for Mia indicated it was her "preference" to wait to terminate parental rights until the home study was completed.

The court asked parents' counsel for an offer of proof. Father's counsel stated: "[M]y client has been visiting with his child and he bonds with his child, which is the exception for the .26 hearing. So he believes that would apply. [¶] And furthermore, . . . he is now enrolled in a full drug program through the criminal court in Orange County, and he has begun to participate in the program. [¶] Before that, he did have the financial issues, and he did not have the stability; however, he has not given up. He does love his child very much, and he is doing everything he can to still continue to comply with all court orders." Mother's counsel stated: "[M]y client has had contact with her child, and she maintains that she does have a bond with Mia. Although she's not in a program, this is something that she's seeking to do." The court inquired whether it was true that the parents had not visited since December. Counsel said it was not true and that the parents

had visited eight or nine times in the five months since then. The court stated there was no reason to set the matter for a contest because the offer of proof did not indicate the existence of evidence of a strong emotional attachment and potential harm to Mia from termination of the relationship. Specifically, the court found that "each parent's offer of proof . . . is insufficient to persuade me that if the matter were set for a contested hearing, there's any reasonable likelihood that they would persuade me that they meet [the] exception [of § 366.26(c)(1)(B)(1)] and that it would be detrimental to terminate . . . [¶] . . . visitation . . . . [¶] I've not heard any offer of proof as to the emotional attachment, to the harm if the court terminated parental rights, the harm to the child."

With respect to visitation, the court stated, "assuming [Father's] statement [concerning more recent visitation] is taken as true, . . . visitation in and of itself is insufficient." Counsel for Mother stated that Mother disputed the report's statement that the last visitation had taken place in December and represented that Mother had visited seven or eight times in 2012. Calculating that this averaged one or two visits a month, the court stated: "I stand by my findings as to the visitation, and that's all the offer of proof is." The court went on to find by clear and convincing evidence that Mia was adoptable and terminated parental rights. This appeal followed.

## DISCUSSION

Mother and Father contend the court denied them due process when it refused to continue the section 366.26 hearing and set a contested hearing on the issue of termination. For the reasons discussed, we disagree.

At a section 366.26 hearing, the burden is on the parents to demonstrate that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1). (*In re T.S.* (2009) 175

6

Cal.App.4th 1031, 1039.) Mother and Father sought to establish the exception contained in section 366.26, subdivision (c)(1)(B)(i), which provides an exception to termination of parental rights where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." To establish this exception, "the parents must do more than demonstrate 'frequent and loving contact' [citation], an emotional bond with the child, or that the parents and child find their visits pleasant. [Citation.] Rather, the parents must show that they occupy 'a parental role' in the child's life." (*In re Andrea R*. (1999) 75 Cal.App.4th 1093, 1108-1109, quoting *In re Beatrice M*. (1994) 29 Cal.App.4th 1411, 1418-1419.) The court must find that the parent-child relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents," and that severing the relationship "would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed . . . ." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575.) "'Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement.'" (*In re T.S*., *supra*, at p. 1039, quoting *In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1350.)

In general, parents have a due process right to present evidence and cross-examine witnesses at a section 366.26 hearing. (See, e.g., *In re Josiah S*. (2002) 102 Cal.App.4th 403, 417-418; *In re Kelly D*. (2000) 82 Cal.App.4th 433, 439-440.) However, the "right to 'due process' at the hearing under section 366.26" is "a flexible concept which depends upon the circumstances and a balancing of various factors." (*In re Jeanette V*. (1998) 68 Cal.App.4th 811, 817.) "The due process right to present evidence is limited to relevant evidence of significant

probative value to the issue before the court." (*Id*. at p. 817.) "The state's strong interest in prompt and efficient trials permits the nonarbitrary exclusion of evidence [citation], such as when the presentation of the evidence will 'necessitate undue consumption of time.'" (*Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1146-1147, quoting Evid. Code, § 352.) Even where a parent's representations are "true" and "could have been substantiated at an evidentiary hearing," if they are insufficient to meet the parent's burden, the court does not err in refusing to expend time and resources on a full hearing. (*Maricela C. v. Superior Court*, *supra*, at p. 1147.) "The trial court can therefore exercise its power to request an offer of proof to clearly identify the contested issue(s) so it can determine whether a parent's representation is sufficient to warrant a hearing involving presentation of evidence and confrontation and cross-examination of witnesses." (*In re Tamika T*. (2002) 97 Cal.App.4th 1114, 1122.) "A proper offer of proof gives the trial court an opportunity to determine if, in fact, there really is a contested issue of fact." (*Id*. at p. 1124.) "The offer of proof must be specific, setting forth the actual evidence to be produced, not merely the facts or issues to be addressed and argued." (*Ibid.*)

Applying these standards, we conclude the court did not abuse its discretion in denying a contested hearing. Given the opportunity to make an offer of proof, neither Mother nor Father offered to produce evidence demonstrating that either of them occupied "a parental role" in Mia's life -- much less that the well-being and stability of a permanent home could be outweighed by the currently existing parent-child relationship. Nor did either parent offer to produce evidence demonstrating that Mia would suffer significant harm were she to be adopted. It was undisputed that Mia had been removed from the parents' custody at the age of two and had resided since then with her half-siblings with whom she was closely bonded. DCFS reports indicated the parents had visited Mia approximately twice a

8

month through 2011, and the parents' offer of proof represented they had continued to visit at approximately the same frequency for the first five months of 2012. Assuming, as the court did, that the representations of additional visitation were true, this would not have established the exception. Nor would the fact that some bond existed between Mother, Freddie and Mia. (See *In re K.P.* (2012) 203 Cal.App.4th 614, 621 ["loving and frequent" contact and "existence of an 'emotional bond' with the child" insufficient to establish exception]; *In re Andrea R.*, *supra*, 75 Cal.App.4th at p. 1108 [evidence that "parents and child find their visits pleasant" insufficient to establish exception].)[6]

Significantly, Mother had never been granted unmonitored visitation, and it does not appear from the record or offer of proof that Father had ever taken advantage of the unmonitored visitation permitted by the court. While proof of day-to-day contact is not an absolute requirement of the section 366.26, subdivision (c)(1)(B)(i) exception, the type of relationship necessary to support it is one "characteristically arising from day-to-day interaction, companionship and shared experiences." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 51.) Consequently, a parent's failure to visit in an unmonitored setting is a significant factor militating against a finding that the exception applies, particularly where, as here, the child was very young when detained. (*Ibid.*; *In re Andrea R.*, *supra*, 75 Cal.App.4th at p. 1109.) In short, neither Mother's nor Father's offer of proof set forth evidence which, if credited, demonstrated that the continuation of the parent-child relationship would promote Mia's well being to such a degree as to outweigh the well-being she would gain in a permanent home, or that severance of the bond

---

[6] Father's counsel also stated that Father had begun to participate in a drug program. Attempts to become a better parent are not relevant at this stage of a dependency proceeding. Father points out that all the parties requested that the termination issue be continued to a later date, but does not suggest that the failure to grant a continuance prejudiced his ability to provide an adequate offer of proof.

would cause actual harm to her.  Thus, the court did not err in finding the offer of proof insufficient to warrant a hearing.

## DISPOSITION

The order terminating parental rights is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

SUZUKAWA, J.

10