Filed 5/6/14  In re Kyle C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re KYLE C., a Person Coming Under the Juvenile Court Law. | B250712 (Los Angeles County Super. Ct. No. CK48617) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. KEITH R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Keith R. (father) appeals from the juvenile court's order terminating his parental rights to his six-year-old son Kyle C. (Kyle). Father contends the juvenile court erred by failing to (1) take Kyle's wishes into account, (2) allow father to call Kyle to testify, and (3) find the beneficial relationship exception to termination existed. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Kyle was detained at birth in June 2007, after testing positive for cocaine, and father's whereabouts were unknown. The Los Angeles County Department of Children and Family Services (the department) placed Kyle in foster care and filed a dependency petition on his behalf, alleging that his parents had a history of substance abuse and that father was a current abuser.[1] In November 2007, father was incarcerated. The juvenile court sustained the substance abuse allegations of the petition, and found father to be Kyle's biological father based on a paternity test.

In February 2008, Kyle was placed with his paternal grandmother, Wanda R. (Wanda). The juvenile court ordered the department to provide father with reunification services, including participation in a drug rehabilitation program with random testing, parent education and individual counseling. Father entered a residential treatment program, but was discharged for drug use in May 2008. By August 2008, the department learned that father was incarcerated again. The juvenile court ordered father's reunification services continued.

The juvenile court set an 18-month review hearing for December 2008. Father was incarcerated. The department learned that the services father had been receiving did not include counseling or parent education. Wanda reported that prior to father's incarceration, father visited Kyle several times a week and helped bathe and feed him. The visits went well, and the last visit took place on May 11, 2008. Father's girlfriend took Kyle to visit father in jail.

_____

[1] The petition was filed under section 300 of the Welfare and Institutions Code. All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

The juvenile court continued the matter for a contested hearing to March 2009. Father was still incarcerated at that time. The court terminated father's reunification services and set a section 366.26 hearing for June 2009.

In June 2009, the department reported that Kyle had established a strong bond with Wanda, as evidenced by his affection toward her and the way he looked to her for assurance and direction, and his calling her "Mom." Kyle appeared to be happy and healthy, well groomed, and appropriately dressed. Wanda reported that Kyle was having weekly visits with father in jail and was happy to see him. During the visits, father and Kyle were separated by a glass partition and spoke via telephone; there was no direct physical contact. Because Wanda wanted father and Kyle to be reunited, the juvenile court appointed her as Kyle's legal guardian. The court also ordered that father's girlfriend could take Kyle to visit father at his place of incarceration. Wanda eventually decided that because father would be incarcerated for an extended period of time, she wanted to adopt Kyle.

Over the next three years, the juvenile court continued the section 366.26 hearing several times for the completion of Wanda's home study and conducted periodic reviews. At each hearing, the department reported that Wanda continued to provide appropriate care for Kyle and wanted to adopt him, that they had a strong bond, and that Kyle was thriving in her care. The department also reported that Kyle was visiting father in prison once a month. According to father's girlfriend, the visits went well and Kyle was always happy to see father. Wanda reported that Kyle liked visiting father and did not return upset or act out after visits.

After a referral of general neglect was determined to be unfounded, Wanda's home study was eventually completed and approved on February 21, 2013. The paternal aunt agreed to coadopt Kyle and her home study was approved at the same time.

On February 22, 2013, the department reported that Kyle was "somewhat aware his grandmother want[ed] to adopt him. He has stated he wants to live with his mom (grandmother). During the home study process this worker observed the appropriate affection the child has towards his caregiver and the caregiver has towards the child."

3

During the hearing on February 22, 2013, father's attorney asked that the hearing be continued and set for contest and that Kyle be on call. Kyle's attorney asked for an offer of proof as to why Kyle should be on call. Father's attorney responded that father was still in custody, that he had a beneficial relationship exception to termination, that Kyle was seeing father weekly, and that Kyle could testify as to how close he was with father. The juvenile court denied the request to put Kyle on call, stating, "I'm aware of how often he visits and given his age, I only think it helps him." The court set the contested hearing for April 11, 2013.

Meanwhile, the department reported that Wanda was taking Kyle to visit father every other weekend, that the visits were going well, and there were no issues or concerns over the visits.

On April 11, 2013, father's attorney restated her objection to the juvenile court not letting Kyle testify. The court continued the hearing to May 7, 2013. On that day, Kyle's attorney announced that Kyle was not present and that his appearance was waived. Father's attorney did not object or indicate that she had not waived his appearance.

The juvenile court ultimately conducted the section 366.26 hearing on June 18, 2013. Father testified that his last visit with Kyle was three days earlier at the Los Angeles County Jail. According to father, Kyle's face "lit up like a Christmas tree" when he saw father. The visit lasted 30 minutes and they were separated by a glass partition. The visit prior to that one took place on February 7, 2013 at the CRC Correctional Facility in an open patio and lasted five hours. For the entire visit, they embraced and Kyle was "kind of sad" to leave. Father testified that he had 12 visits with Kyle in 2012 that took place about every 45 to 60 days. Father spoke with Kyle on the telephone four or five times during the past six months. Kyle called father "Daddy" and "Dad."

Father admitted that Kyle had never been placed in his care or custody. Father had been incarcerated for five years, or most of Kyle's life. The last time father had any contact with Kyle outside of custody was July 13, 2008, the day father was first incarcerated during this case.

4

At the conclusion of father's testimony, his attorney asked to call Kyle as a witness to testify about his visitation and contact with father. Kyle's attorney objected to the request. The juvenile court stated: "I'm going to deny the request to call him, one, because of his age. Two, because it's confusing. Three, I have read the reports and I think it would be under [Evidence Code section] 352. It would take us a very long time to seek what you're trying to do with respect, given his age."

The juvenile court terminated father's parental rights to Kyle, finding that Kyle was likely to be adopted and that no exception to termination had been established. This appeal followed.

## DISCUSSION

### I. Kyle's Wishes

Father contends reversal is required because the juvenile court violated the statutory requirement to consider Kyle's wishes. We disagree.

Section 366.26, subdivision (h)(1) provides that at all proceedings pursuant to this section, "the court shall consider the wishes of the child and shall act in the best interests of the child." In *In re Julian L.* (1998) 67 Cal.App.4th 204, 208–209, Division Four of this court stated: "'What the court must strive to do is "to explore the minor's feelings regarding his/her biological parents, foster parents, and prospective adoptive parents, if any, as well as his/her current living arrangements. . . . [A]n attempt should be made to obtain this information so that the court will have before it some evidence of the minor's feelings from which it can then infer his/her wishes regarding the issue confronting the court." [Citations.]'"

We reject father's argument that the record "does not include any evidence regarding the wishes of the child." The department's reports contained evidence of Kyle's feelings regarding father and Wanda and his living arrangements. The department reported several times that Kyle had established a strong bond with Wanda, looked to her for direction and assurance, displayed affection toward her, and called her "Mom." On February 22, 2013, the department reported that Kyle was "somewhat aware his grandmother wanted to adopt him," and he "want[ed] to live" with her. The department

5

also reported several times that Kyle enjoyed visits with his father at father's places of incarceration.  The juvenile court stated that it had read the reports expressing Kyle's wishes.  Accordingly, the juvenile court did not violate the statutory mandate to take Kyle's wishes into account and to act in the best interests of the child.

## II.  Kyle as a Witness

Father contends the juvenile court violated his statutory and constitutional rights by denying his request to call Kyle as a witness.  We disagree.

Father points out that in addition to considering a child's wishes, a juvenile court at a section 366.36 hearing "shall" consider the social services report and "shall receive other evidence that the parties may present."  (§ 366.26, subd. (b).)  He also argues that he had a due process right to call and cross-examine witnesses at the section 366.26 hearing.  Such right, however, is not absolute.

Due process in dependency cases "is not synonymous with full-fledged cross-examination rights.  [Citation.]  [I]t is a flexible concept which depends upon the circumstances and a balancing of various factors.  [Citation.]  The due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court.  [Citations.]  Even where cross-examination is involved, the trial court may properly request an offer of proof if an entire line of cross-examination appears to the court to be irrelevant to the issue before the court.  [Citations.]"  (*In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817; see also *Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1147.)  "Different levels of due process protection apply at different stages of dependency proceedings.  [Citations.]  After reunification services are terminated and a section 366.26 hearing is set the focus shifts from the parent's interest in reunification to the child's need for permanency and stability.  [Citation.]  For this reason, we agree that cases holding a parent has an unfettered due process right to confront and cross-examine adverse witnesses at contested hearings held before the permanency planning stage do not compel the identical conclusion with respect to the section 366.26 hearing."  (*In re Thomas R.* (2006) 145 Cal.App.4th 726, 733, fn. omitted.)  Also, "[t]he court in its discretion may exclude evidence if its probative

value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

Here, father's attorney made the following offer of proof on February 22, 2013: "Father is in custody. They have a [section 366.26 subdivision] (c)(1)(b)(i) exception and the regular and consistent visitation, which he has with his father and how he feels about his father, and how close [they] are. He sees his father and his father's wife weekly." The juvenile court responded that it already knew how often six-year-old Kyle visited father. Later, on June 18, 2013, when father's attorney asked to call Kyle as a witness, she stated, "I'm asking to call Kyle regarding regular visitation and contact with his father." The court stated that it knew Kyle referred to father as "Daddy" or "Dad," and that it had read the many reports over the last three years.

The record shows that the juvenile court had evidence of Kyle's and father's visitation and of Kyle's relationship with father. The court already knew that Kyle enjoyed his visits with father, called him "Daddy," was happy to see him, missed him when the visits were over, and did not act out or demonstrate behavioral problems after the visits. Father's offer of proof did not indicate that Kyle would testify differently or add any detail to what the court already knew. Kyle's testimony was not being offered to contradict evidence or to impeach a witness; rather, father's offers of proof showed only that father wanted to use Kyle to corroborate his own testimony and the statements that were in the department's reports.

Because father did not have a due process right to elicit redundant testimony from Kyle, the juvenile court acted within its discretion in denying father's request to call Kyle as a witness.

**III. Exception to Termination of Parental Rights**

Finally, father contends the juvenile court erred in finding that he failed to prove a beneficial relationship exception to the termination of parental rights. Again, we disagree.

7

*Applicable Law*

Under section 366.26, subdivision (c)(1), if the court finds by clear and convincing evidence that it is likely the dependent child will be adopted, "the court shall terminate parental rights and order the child placed for adoption." A finding that the court has continued to remove the child from the custody of the parent and has terminated reunification services "shall constitute a sufficient basis for termination of parental rights" unless the court finds a compelling reason for determining that termination would be detrimental to the child because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

It is well established that a parent bears the burden of proving that termination would be detrimental to the child under section 366.26, subdivision (c)(1)(B)(i). (Cal. Rules of Court, rule 5.725(e)(3); *In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1350; *In re Derek W*. (1999) 73 Cal.App.4th 823, 826–827; *In re Lorenzo C*. (1997) 54 Cal.App.4th 1330, 1343–1344.) This is not an easy burden to meet. "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D., supra,* at p. 1350.)

While courts have differed on the standard of review, we follow the "composite" standard set forth by our colleagues in Division Seven of this District: "The first determination—most commonly whether a beneficial parental or sibling relationship exists, although section 366.26 does contain other exceptions—is, because of its factual nature, properly reviewed for substantial evidence. [Citation.] The second determination in the exception analysis . . . 'which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption,' is appropriately reviewed under the deferential abuse of discretion standard."

8

(*In re K.P.* (2012) 203 Cal.App.4th 614, 622, citing *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314–1315.)

### *Regular Visitation and Contact*

While the juvenile court acknowledged that father was "diligent" and "engaged" and had sent letters to the court and to Kyle, the court found that father had not maintained regular visitation and contact with Kyle. The court noted that father had been incarcerated nearly all of Kyle's life and that visits were subject to different criteria, including the cooperation of others and father's location. Father testified that in 2012, he had 12 visits with Kyle. But father also testified that the visits were spaced out between 45 and 60 days, which would calculate to far fewer than 12 visits a year. Father also admitted that he did not see Kyle for four months in 2013 while father was being transferred to a different facility. Substantial evidence supports the juvenile court's finding that father did not maintain regular visitation and contact with Kyle.

### *Detriment*

The "'benefit from continuing the [parent/child] relationship'" exception in section 366.26, subd. (c)(1)(B)(i) has been defined to mean that "the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) "In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Ibid.*)

"The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467, fn. omitted; *In re Helen W.* (2007) 150 Cal.App.4th 71, 81.)

9

Applying these factors here, we find they do not support an exception to the termination of parental rights. Kyle was detained at birth and has never been in the custody and care of father. Nearly all of his visits with father took place while they were separated by a glass partition without any direct physical contact. Kyle is strongly bonded to Wanda and thriving in her care, and there is no evidence that Kyle has any particular needs that can only be met by father.

Father argues that Kyle has a significant and emotional relationship with him and always enjoyed their visits. But even frequent and loving contact between a parent and child is not sufficient by itself to establish that the exception applies. (*In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534.) Interaction between a natural parent and child will always confer some incidental benefit to the child. (*In re Autumn H.*, *supra,* 27 Cal.App.4th at p. 575.) "A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent." (*In re Angel B.*, *supra,* 97 Cal.App.4th at p. 466.) "[F]or the exception to apply, the emotional attachment between the child and parent must be that of parent and child rather than one of being a friendly visitor or friendly nonparent relative, such as an aunt." (*Id.* at p. 468; see also *In re Jasmine D., supra,* 78 Cal.App.4th at p. 1350 ["We do agree . . . that a *parental* relationship is necessary for the exception to apply, not merely a friendly or familiar one"].)

The evidence amply supports the juvenile court's finding that father has never occupied a parental role in Kyle's life. As the court noted in weighing Kyle's relationships with father and with his paternal grandmother, Kyle did receive some benefit in knowing who his father is and in visiting him. But such benefit by no means outweighs the benefit and well being Kyle will receive by being adopted by his paternal grandmother, who has cared for him nearly all his life and who has provided him with a

10

stable and loving home.  Accordingly, the juvenile court did not abuse its discretion in terminating father's parental rights.

## DISPOSITION

The order terminating father's parental rights is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
  ASHMANN-GERST


We concur:


_____, P. J.
  BOREN


_____, J.
  CHAVEZ

11