[No. B120489. Second Dist., Div. Two. Sept. 23, 1998.]

MARICELA C., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Real Party in Interest.

---

**COUNSEL**

Randall Pacheco and Thomas P. Fagan for Petitioner.

No appearance for Respondent.

De Witt W. Clinton, County Counsel, Auxiliary Legal Services, Lois Timnick, Judith A. German and Amy N. Carter for Real Party in Interest.

---

**OPINION**

**NOTT, J.**—Petitioner, Maricela C., seeks a writ of mandate directing the juvenile court to set aside its order of March 17, 1998, directing the Los Angeles County Department of Children and Family Services (DCFS) to provide permanent placement services for her children, Christina, Christian and Jovany (the minors), and setting a Welfare and Institutions Code section 366.26[1] selection and implementation hearing. The question presented is whether the court, pursuant to section 366.3, subdivision (f) (hereafter section 366.3(f)) should have conducted a contested hearing prior to setting a section 366.26 hearing. We conclude that the court had no such obligation.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is the mother of Christina C. (born Aug. 28, 1988), Christian C. (born June 4, 1990) and Jovany C. (born Mar. 7, 1993).

On February 13, 1991, DCFS filed a petition on behalf of Christina and Christian alleging, among other things, that Christian had been born suffering from symptoms of drug withdrawal and a positive toxicology screen for cocaine, which put him at risk of serious physical and emotional damage, and that petitioner had a history of cocaine and alcohol use, which rendered her incapable of providing Christina and Christian with the basic necessities of life.

Eventually a contested section 366.26 selection and implementation hearing was scheduled. However, on January 8, 1993, the matter was resolved in

---

[1]All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

mediation, and Christina and Christian were ordered into long-term foster care. Two months later, petitioner gave birth to Jovany. Shortly thereafter, on March 16, 1993, DCFS filed a petition on behalf of petitioner's third child alleging that he, like Christian, had been born with a positive toxicology screen for and symptoms of cocaine exposure.

On July 16, 1993, petitioner submitted on the amended dependency petition filed on behalf of Jovany. The court sustained the amended petition, proceeded to disposition, and declared Jovany a dependent child.

On July 28, 1993, the court issued an order placing all three minors with their maternal grandmother.

On July 15, 1995, the juvenile court held a section 366.26 hearing for Christina and Christian, and a 12-month judicial review hearing for Jovany. The court terminated reunification for Jovany, and set a section 366.26 selection and implementation hearing to establish a permanent plan for him. The court appointed the minors' maternal grandmother the legal guardian of Christina and Christian.

The minors remained with their maternal grandmother until August 12, 1996, when they were removed pursuant to a section 387 petition filed on August 14, 1996. On March 18, 1997, the court terminated the maternal grandmother's legal guardianship. Christian and Jovany were placed with foster mother Yolanda C. A few months later, Christina, too, was placed with Yolanda C.

On March 17, 1998, a status review hearing was held pursuant to section 366.3. Petitioner's counsel asked the court to set a contested review hearing pursuant to section 366.3(f) on petitioner's request to have the minors returned to her custody. Counsel for petitioner represented that, at an evidentiary hearing, petitioner would dispute the statements in the social worker's report characterizing the quality of her visits. Petitioner's attorney also stated that petitioner wanted to inform the court "that what the report [didn't] mention is that she has been saving money to get a car and recently purchased one . . . , and that's the mechanism whereby she hopes to be able to have more regular visitation." The court denied counsel's request, opining that the legislative intent of section 366.3(f) was to increase adoptions, and merely required the court to "consider" return to the home of the parent. The court did not believe that the statute afforded a parent the right to a full evidentiary hearing. The court then scheduled a section 366.26 hearing to consider termination of petitioner's parental rights. This petition followed.

## II. CONTENTION

Petitioner contends that she is entitled to a contested hearing pursuant to section 366.3(f) on the issue of return of her children to her home.

## III. DISCUSSION

### A. *Section 366.3(f)*

Prior to 1998, section 366.3(f) provided that "[a]t least every 12 months, during a review under subdivision (e), the court shall order that a hearing be held pursuant to Section 366.26. However, if the court finds by clear and convincing evidence, based on the evidence already presented to it that the minor is not a proper subject for adoption, and no one is willing to accept legal guardianship, the court may, upon a determination that a hearing pursuant to Section 366.26 is therefore unnecessary, order that the minor remain in long-term foster care." (§ 366.3(f), added by Stats. 1987, ch. 1485, § 49, p. 5642, operative Jan. 1, 1989. Amended by Stats. 1989, ch. 913, § 18; Stats. 1990, ch. 1530 (Sen Bill No. 2232), § 8, p. 7188; Stats. 1994, ch. 900 (Sen Bill No. 1407), § 3; Stats. 1995, ch. 540 (Assem. Bill. No. 1523), § 9; Stats. 1996, ch. 1138 (Assem. Bill. No. 2154).)

Section 366.3(f) was amended to state as follows: "At the review held pursuant to paragraph (3) of subdivision (d), in addition to the review held pursuant to subdivision (e), the court shall consider all permanency planning options for the child including whether the child should be returned to the home of the parent, placed for adoption, or appointed a legal guardian, or whether the child should remain in foster care. The court shall order that a hearing be held pursuant to Section 366.26 unless it determines by clear and convincing evidence that the child is not a proper subject for adoption or that there is no one willing to accept legal guardianship. Only upon that determination may the court order that the minor child remain in long-term foster care, without holding a hearing pursuant to Section 366.26."

### B. *Rules of Statutory Interpretation*

■ Statutory interpretation requires a three-step process. First, a court should examine the actual language of the statute, giving the words their ordinary, everyday meaning. (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 [8 Cal.Rptr.2d 298].) If the meaning is without ambiguity, doubt, or uncertainty, then the language controls and there is nothing to "interpret" or "construe." (*Id.* at p. 1239.) If the meaning of the words is not clear, a court must take the second step and refer to the

legislative history. (*Ibid.*) The final step, which is to apply reason, practicality, and common sense to the language at hand, should only be taken when the first two steps have failed to reveal clear meaning. If possible, the words should be interpreted to make them workable and reasonable, in accord with common sense and justice, and to avoid an absurd result. (*Ibid.*) The parts of a statute must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) We now apply this approach to section 366.3(f).

## C. Application of Rules

### 1. Plain Language

The statute states that the court "shall consider all permanency planning options . . . including whether the child should be returned to the home of the parent." (§ 366.3(f).) According to petitioner, the Legislature's use of the term "shall" means that at a postpermanency planning review hearing for a child in long-term foster care the court is required to consider evidence presented by a parent which shows that placement of the child with the parent would be best for the child. Petitioner concludes that in order to fulfill its obligation, the court must give the parties an opportunity to be heard and to present evidence on the issue. Otherwise, petitioner insists, the new statutory language has no legal effect at all.

Although section 366.3(f) could be construed in the manner suggested by petitioner, the language is not as clear as petitioner claims. We are, therefore, required to review the legislative history of the statute in order to determine the intent of the Legislature. (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)

### 2. Legislative History

A review of the legislative history of section 366.3(f) reveals that the statute was amended as part of California Assembly Bill No. 1544 (1997-1998 Reg. Sess.). The intent was to bring California's dependency law into compliance with recent changes to federal law so that California could continue to receive federal child welfare funding. (See doc. entitled "AB 1544 as Amended 8-25-97 and with Author's Amendments Agreed to by Senate Judiciary Committee on 8-26-97, Section by Section Description of Provisions with Fiscal Impact.") The amendment was necessary "to provide a technical cleanup, as recommended by Judicial Council, to statute enacted last year, to conform to changes in federal law concerning the frequency of

the permanency plan review hearings. Subsection (f) is amended to clarify that this every 12 month review hearing is not a WIC 366.26 implementation hearing, and only under specified conditions (the child is subject for adoption or guardianship) will the 366.26 hearing be set at the 12-month permanency plan review hearing." (*Id.* at p. 10.) Without the "technical cleanup," juvenile courts could have construed "existing law to require holding the 366.26 hearing every 12 months if the permanent plan selected for the child is long term foster care." (*Ibid.*) Such a construction would have had costly implications—because "[n]otice and service standards for the 366.26 hearing are rigorous, and include costly personal service and publication of legal notices in newspapers." (*Ibid.*)

■ We are required to assume that the Legislature amends a statute for a purpose. That purpose, however, need not necessarily be to change the law. The court's "consideration of the surrounding circumstances can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning. . . ." (*Western Security Bank* v. *Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507], citations omitted.) ■ A review of a permanent plan hearing is held to fulfill an "important purpose of dependency proceedings," which is "to provide children with stable, permanent homes." (*In re Heather P.* (1989) 209 Cal.App.3d 886, 890 [257 Cal.Rptr. 545].) The recent amendments to section 366.3(f) as "technical cleanup" legislation operate to effectuate this goal, not to institute a requirement for additional contested hearings.

In *In re Heather P., supra,* 209 Cal.App.3d at page 890, the court found that because a juvenile court explicitly makes a finding at the permanency planning hearing that returning the minor to the parent's custody would create a substantial risk of detriment to the child, the juvenile court need not continue to make such a finding at each subsequent review. (*Ibid.*) The purpose of the permanency planning review procedure is not to relitigate constantly the necessity of continuing the child's permanent plan. (*Ibid.*) When the Legislature amended section 366.3(f), to indicate that a court shall consider all permanency planning options for the child, it did *not* add a requirement that the court make an explicit finding of whether it would be detrimental to return the child to the parent.

■ "It is a well-established principle of statutory construction that when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction." (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) Petitioner argues that the

principle of statutory construction *expressio unius est exclusio alterius* (the mention of one thing rules out other things not mentioned) is inapplicable to section 366.3(f). Her argument is unpersuasive. The Legislature must be imputed with awareness of appellate court opinions holding that section 366.3(f) does not require an explicit finding of whether it would be detrimental to return a child home. If the Legislature had wanted to usurp *In re Heather P.*, and *In re Elizabeth G.* (1988) 205 Cal.App.3d 1327 [253 Cal.Rptr. 161] by requiring such a finding, it easily could have done so, as it has done elsewhere in the Welfare and Institutions Code. (See §§ 366.21, subds. (e) and (f), 366.22, subd. (a) [explicitly requiring that the juvenile court return the minor to the custody of the parent unless it finds that such return would create a substantial risk of detriment to the child's well-being].)

In its amendments to section 366.3(f) the Legislature elected to include the options a court shall consider at a review of a permanent plan hearing, and it elected not to include a requirement that the court hold a contested hearing and make findings on each of the options. We refuse to read into the statute a requirement that the Legislature declined to add.

■ A review of the legislative materials leads us to believe that the purpose of the Legislature in amending section 366.3(f) was to enact cleanup legislation to avoid holding unnecessary hearings, not to require additional hearings.

### 3. *Reason, Practicality, and Common Sense*

■ A statute should be interpreted to produce a result that is workable and reasonable. (*Regents of University of California v. Superior Court* (1970) 3 Cal.3d 529, 536-537 [91 Cal.Rptr. 57, 476 P.2d 457].) Petitioner claims that section 366.3(f) must be construed to mean that she is entitled to a contested hearing. To construe it in any other way, she contends, would be unreasonable since it would deny her due process.

■ While a parent in a juvenile dependency proceeding has a due process right to a meaningful hearing with the opportunity to present evidence (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 413 [15 Cal.Rptr.2d 613]), parents in dependency proceedings "are not entitled to full confrontation and cross-examination." (*In re Sade C.* (1996) 13 Cal.4th 952, 992 [55 Cal.Rptr.2d 771, 920 P.2d 716].) Due process requires a balance. (*Id.* at pp. 986-991.) The state's strong interest in prompt and efficient trials permits the nonarbitrary exclusion of evidence (see *Washington v. Texas* (1967) 388 U.S. 14, 22-25 [87 S.Ct. 1920, 1924-1926, 18 L.Ed.2d 1019]), such as when

the presentation of the evidence will "necessitate undue consumption of time." (Evid. Code, § 352.) The due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court. (*People* v. *Marshall* (1996) 13 Cal.4th 799, 836 [55 Cal.Rptr.2d 347, 919 P.2d 1280]; *People* v. *Burrell-Hart* (1987) 192 Cal.App.3d 593, 599 [237 Cal.Rptr. 654].)

 The language at issue here requires a juvenile court to "consider" all permanency planning options, including whether the child should be returned to the home of the parent. (§ 366.3(f).) The word "consider" means "to think about carefully," to "take into account," and "to think about in order to arrive at a judgment or decision." (Webster's Collegiate Dict. (10th ed. 1995) p. 246.) We do not believe that a court is required to hold a contested hearing in order to understand and make a decision about whether to return a child to its parent. Moreover, nothing in section 366.3(f) requires a juvenile court to hold such a hearing. We conclude that in order to meet the requirement set forth in section 366.3(f) the juvenile court is required to accept an offer of proof from the parent seeking return of his or her child. The court is then required to focus its attention on the evidence presented, and to consider whether the parent's representations are sufficient to warrant a hearing involving full confrontation and cross-examination. Interpreting section 366.3(f) in this way, we believe, produces a result that is workable and reasonable.

In petitioner's case, even if we assume her representations were true, and could have been substantiated at an evidentiary hearing, her arguments were insufficient to meet her burden to show that removing the minors from their current placement and returning them to her care would be in the children's best interest. (See *In re Elizabeth G., supra*, 205 Cal.App.3d at p. 1332 ["It shall be presumed that continued care is in the interests of the minor, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the minor."].) Petitioner represented that, at an evidentiary hearing, she would challenge the statements in the DCFS status review report about the quality of her visits with the minors. Petitioner made no representations that she would challenge the reports on the infrequency of her visits. She failed to visit the minors even once from December 1996 to November 1997. And, since she began visiting the minors again in November, petitioner had visited only three times before the hearing on March 17, 1998. Petitioner also sought to present evidence that she recently had obtained a car, so she would be visiting more frequently in the future. Even if petitioner had been allowed to present evidence of her ability and intent to visit more often in the future, such evidence would not have been a sufficient basis for the return of the minors to

petitioner's custody at the time of the March 17, 1998, hearing. Finally, petitioner sought an opportunity to justify her failure to visit the minors regularly with the "fact that she is reliant on public transportation." It would have been improper for the juvenile court to grant petitioner an evidentiary hearing merely to allow her to attempt to justify her failure to visit her children. On March 17, 1998, seven years after petitioner's conduct brought Christina and Christian into the juvenile dependency system, and five years after petitioner repeated her earlier mistakes and brought Jovany into the dependency system, the time had long since passed to focus on petitioner's interests and excuses. Petitioner's difficulties in using public transportation to visit the minors may have been relevant at the hearings that took place years ago, before reunification had been terminated. However, after reunification was terminated on April 20, 1992 (for Christina and Christian), and on July 15, 1995 (for Jovany), the focus of the dependency proceedings shifted from maintaining biological ties to providing stability and permanence for the children. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826].)

We conclude that petitioner's representations were insufficient to warrant a contested hearing on her request to have the children returned to her custody, since petitioner made no representation that she could produce any evidence that returning the minors to her custody after seven and five years, respectively, would be in the minors' best interest.

## IV. DISPOSITION

The petition is denied.

Boren, P. J., and Zebrowski, J., concurred.