Filed 5/29/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re DANIELA G., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> W.G., <br><br>     Defendant and Appellant. | A152434 <br><br> (San Francisco County Super. Ct. No. JD17-3114) |

       W.G. (father) was accused of molesting his 13-year-old stepdaughter (stepdaughter) and grooming his eight-year-old daughter, Daniela G., for sexual abuse. He challenges an order finding dependency jurisdiction over Daniela, awarding sole custody of her to his wife (mother), and dismissing the case. In a claim we reject, he argues that he was denied due process because the juvenile court refused to require Daniela and stepdaughter to testify at the combined jurisdictional and dispositional hearing.

       In certain circumstances, a witness may be excused from testifying when found "unavailable" due to a physical or mental illness or infirmity, including when the witness is a victim of a crime and would experience sufficient trauma if forced to testify. (Evid. Code, § 240, subds. (a)(3), (c).)[1] But because this statute has significant limits on its applicability, case law has recognized a broader basis for excusing a child from testifying

---

      [1] All further statutory references are to the Evidence Code unless otherwise noted.

1

in a dependency proceeding.  A juvenile court can, consistent with a parent's due process rights, refuse to compel the testimony of a child who is otherwise available when "the possible benefit derivable from [the] testimony would not warrant the [psychological] injury it would cause."  (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1085-1086, 1088 (*Jennifer J.*).)  *Jennifer J.* announced this principle in the context of excluding a child's testimony at a selection-and-implementation hearing under Welfare and Institutions Code section 366.26, and no published decision has explicitly extended it to apply to jurisdictional and dispositional hearings.  We do so here, and we conclude that the juvenile court properly applied the principle in excusing Daniela and stepdaughter from testifying.  We therefore affirm.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

In late April 2017, stepdaughter told her maternal uncle, who resided in the family home, that she was upset because father was in a bedroom with Daniela.  The uncle listened at the bedroom door, and he heard Daniela say, "You need to put your clothes on," and father say, "C'mon mami[,] give me a massage."  The uncle immediately called mother, who came home and found the bedroom door locked.  After mother knocked, father opened the door and then got into the bed.  Daniela was also in the bed and " 'looked afraid.' "  Later, mother found a note stepdaughter had written in which she expressed suicidal thoughts.  When asked about the note, stepdaughter told mother that father had been molesting her.

Soon after, mother took stepdaughter to the police station to make a report, and stepdaughter and Daniela were interviewed at the Child and Adolescent Sexual Abuse Resource Center (CASARC).  Stepdaughter said that father "had touched her vagina, breasts[,] and butt" and "had penetrated her vagina with both his penis and his fingers." The sexual abuse had been going on for two years, and she was afraid the same thing would happen to Daniela.  Daniela did not disclose any abuse, although she said she

2

sometimes gave father massages. Both girls denied any mistreatment by mother. Physical exams of the girls did not reveal any indications of sexual abuse.

Daniela and stepdaughter had been the subject of a child welfare investigation in 2015 after father was accused of viewing child pornography on his computer. He denied doing so but, against mother's wishes, he kept a computer in the home after that investigation was closed. Mother reported that she and father had a "toxic" relationship, and she "worrie[d] that . . . father sexually abused [stepdaughter] to get back at her." Father was arrested, and when contacted in jail, he "denied abusing [stepdaughter] and provided no further information."

In early May 2017, real party in interest the San Francisco Human Services Agency (Agency) filed a petition seeking dependency jurisdiction over Daniela under Welfare and Institutions Code section 300, subdivision (b) (failure to protect) and subdivision (d) (sexual abuse) on the basis that she was at risk of harm based on the bedroom incident and father's sexual abuse of stepdaughter.[2] At the detention hearing, the juvenile court placed Daniela with mother and ordered that father not have any visitation. It also granted a restraining order protecting mother, Daniela, and stepdaughter from father.

The June 2017 dispositional report recommended that the petition's allegations be sustained, the petition be dismissed, and mother, who was in the process of divorcing father, be awarded sole custody of Daniela. Mother stated that she believed stepdaughter "100 percent" and had "no doubt" that the allegations of sexual abuse were true. Father continued to deny the allegations and said he did "not know why [stepdaughter] would lie," though he speculated that she was aware his and mother's "relationship [was] disintegrating" and might be taking mother's side. He opposed the Agency's recommendations and expressed a desire for shared custody of or visitation with Daniela. Although Daniela had stated during her CASARC interview that she would be "sad" if separated from father, she now said she did not want visits with him.

_____

[2] A dependency petition was also filed for stepdaughter, but the Agency withdrew it a month later.

3

Father subpoenaed Daniela to testify at the July 2017 combined jurisdictional and dispositional hearing.  Shortly before the hearing, her counsel filed a motion to quash the subpoena under section 240 and *Jennifer J.* because testifying could cause her "psychological injury."  The motion also sought admission of Daniela's statements in the Agency reports and CASARC interview under the child dependency hearsay exception. (See *In re Cindy L.* (1997) 17 Cal.4th 15, 18.)  Father opposed the motion, arguing that a finding of unavailability under section 240 based on a risk of psychological harm required an expert opinion that the child would be traumatized by testifying.

Father apparently also subpoenaed stepdaughter, and counsel was appointed to represent her for purposes of the combined jurisdictional and dispositional hearing.  No written motions involving any such subpoena are in our record, but stepdaughter's counsel at the hearing alluded to a request that stepdaughter be found unavailable to testify.  Counsel noted that she had obtained a letter from the clinician who had conducted stepdaughter's Child and Adolescent Needs and Strengths (CANS) assessment, in which the clinician stated that stepdaughter was "experiencing significant psychological symptoms," including symptoms of PTSD, and was "very vulnerable." The clinician also stated that the stress of testifying would put stepdaughter at risk given her "history of self-harm and suicidal ideation."  The juvenile court deferred ruling on "the motion regarding not having either child testify" until other evidence had been presented.

Two social workers testified at the hearing.  The social worker in this case opined that having Daniela testify would be "extremely detrimental" because of her age and the nature of the allegations against father.  The worker also testified, as to stepdaughter, that "anyone who has been a victim of sexual abuse is emotionally traumatized by the events that occurred" and that it would be "detrimental for her to have to testify and see" father.

A social worker who investigated stepdaughter's case testified that stepdaughter was "very fearful" and "very embarrassed" and felt "a tremendous amount of guilt that she hadn't come forward earlier" to protect Daniela.  The worker also characterized Daniela as "a very young eight-year-old" who was "not sophisticated" and might not

4

"even know[] what sex is" or fully understand what father had done to stepdaughter except that it was "something bad." This worker agreed it would be "harmful" to both girls if they had to testify in court in front of father. The worker also indicated that visitation with father would be detrimental to Daniela because father had engaged in "grooming behaviors," denied any abuse, and failed to seek treatment.

The juvenile court admitted the Agency's detention/jurisdiction and dispositional reports into evidence. It also admitted the recordings of the CASARC interviews of Daniela and stepdaughter, as well as their CANS assessments and the letter from the clinician who had done stepdaughter's assessment. Father did not present any witnesses or documentary evidence, except for a transcript of Daniela's CASARC interview. On appeal, he does not challenge the admission of any of the Agency's evidence, including the girls' out-of-court statements.

The juvenile court ruled that neither Daniela nor stepdaughter would be required to testify. Citing *Jennifer J.*, the court observed that it had "to weigh whether the live testimony of either of these children would materially affect issues that [it] need[ed] to resolve . . . against the potential psychological injury that could happen to either of these children if they had to testify in front of [father]." It rejected father's argument that "a medical person or a therapist . . . actually [has] to come to court and say it's not in these children's best interest to testify" and found there was "an abundance of evidence . . . that it would be harmful to [them] to have to testify in front of [father]." It also found that admitting the CASARC interviews "without the testimony of these children" did not violate father's constitutional rights and specifically found stepdaughter's statements "extremely credible."

The juvenile court found the petition's allegations true, except that it struck an allegation that mother had not protected Daniela from sexual abuse. The court also found that visitation with father would be detrimental to Daniela. It awarded sole custody to mother and dismissed the petition.

5

## II.
### DISCUSSION

Father claims the juvenile court erred by not requiring either Daniela or stepdaughter to testify because (1) the court did not consider the possibility of having them testify in chambers, outside of his presence, and (2) there was insufficient evidence that either girl would be traumatized by testifying. He argues that the court's ruling violated his due process rights to confront and cross-examine witnesses and present evidence. We are not persuaded.

*A.      Standards of Review.*

We review the exclusion of a child's testimony to avoid psychological harm to the child for an abuse of discretion. (See *Jennifer J., supra*, 8 Cal.App.4th at p. 1088.) To the extent father challenges the factual findings underlying the juvenile court's ruling, our review is for substantial evidence, and to the extent his claims raise questions of law, our review is de novo. (See *In re D.M.* (2015) 242 Cal.App.4th 634, 640.)

*B.      Father Forfeited His Argument that the Juvenile Court Was Required to Consider Having the Girls Testify in Chambers.*

On appeal, father argues that the juvenile court erred by not considering the possibility of having Daniela and stepdaughter testify outside of his presence. We agree with the Agency that father forfeited this argument by not raising it below. A minor's testimony may be taken in chambers without a parent present in certain circumstances, including when "[t]he minor is afraid to testify in front of his or her parent." (Welf. & Inst. Code, § 350, subd. (b).) Father never argued below that either girl should testify in chambers, and the court apparently did not consider the possibility. Father contends that he nevertheless preserved the issue because "[t]here are no additional facts that would have to be presented for the children to testify in . . . chambers." But the court was not required as a matter of law to use this procedure (see *In re Juan H.* (1992) 11 Cal.App.4th 169, 172), and father does not claim otherwise. Because the issue was never raised, there is no ruling that we can evaluate for an abuse of discretion, and the claim is therefore forfeited. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 426.)

6

Father spends much of his briefing addressing the standards for finding a witness unavailable to testify under section 240.  But we need not decide whether these standards were met because the juvenile court excused Daniela and stepdaughter from testifying based on *Jennifer J.*, not a finding of unavailability under section 240.

Under section 240, a witness is unavailable to testify if the witness is "[d]ead or unable to attend or to testify at the hearing because of then-existing physical or mental illness or infirmity." (§ 240, subd. (a)(3).)  To support a finding of unavailability based on "mental illness or infirmity" under section 240, subdivision (a)(3), " 'the illness or infirmity must be of comparative severity; it must exist to such a degree as to render the witness's attendance, or his [or her] testifying, relatively impossible and not merely inconvenient.' " (*People v. Christensen* (2014) 229 Cal.App.4th 781, 791.)  In this context, " 'the phrase "relatively impossible" to testify does not mean it is impossible to elicit the testimony due to insanity or coma or other total inability to communicate. Rather, the phrase includes the relative impossibility of eliciting testimony without risk of inflicting substantial trauma on the witness.' " (*Ibid.*, italics omitted.)

One way of establishing unavailability under section 240, subdivision (a)(3) is through "[e]xpert testimony that establishes that physical or mental trauma resulting from an alleged crime has caused harm to a witness of sufficient severity that the witness is physically unable to testify or is unable to testify without suffering substantial trauma." (§ 240, subd. (c).)  As used in section 240, " 'expert' means a physician and surgeon, including a psychiatrist, or any person described by subdivision (b), (c), or (e) of Section 1010." (§ 240, subd. (c).)  In turn, those provisions cover licensed (1) psychologists, (2) clinical social workers when they are "engaged in applied psychotherapy of a nonmedical nature," and (3) marriage and family therapists. (§ 1010, subds. (b), (c), (e).)

Father contends that the girls were erroneously excluded as witnesses because the evidence presented about the risk of harm did not satisfy the requirements for expert

7

testimony under section 240, subdivision (c). But a juvenile court has discretion to refuse to require a child to testify even when section 240's requirements are not met if the material effect of the child's testimony on the relevant issues is outweighed by the psychological injury the child risks by testifying. (*Jennifer J., supra*, 8 Cal.App.4th at pp. 1085-1086, 1088.) Thus, the question we must resolve is whether the juvenile court correctly relied on *Jennifer J.* to excuse the girls from testifying.

D.    *The Juvenile Court's Exclusion of the Girls' Testimony Comported with Principles of Due Process.*

"Parents have a fundamental liberty interest in the care, custody, and management of their children." (*David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 777.) Unlike a criminal defendant, a parent in a dependency proceeding does not have a right "to full confrontation and cross-examination" under the Sixth Amendment of the federal Constitution or article I, section 15 of the California Constitution. (*In re Sade C.* (1996) 13 Cal.4th 952, 991-992; *In re Amber S.* (1993) 15 Cal.App.4th 1260, 1264.) A parent does, however, have "a due process right to a meaningful hearing with the opportunity to present evidence," including a right to confrontation and cross-examination of witnesses. (*Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1146; *Amber S.*, at p. 1264; see also Welf. & Inst. Code, §§ 311, subd. (b), 341, 350, subd. (c); Cal. Rules of Court, rule 5.534(g)(1).)

In *Jennifer J.*, the Fourth District Court of Appeal determined that a juvenile court has "discretion to exclude the testimony of a child in order to avoid psychological harm to the child, even though that testimony is relevant, the child is competent to testify, and the child is both practically and legally 'available' to testify," including under section 240. (*Jennifer J., supra*, 8 Cal.App.4th at pp. 1085-1086, 1088.) Given "the overriding objective of the dependency hearing[,] to preserve and promote the best interests of the child, . . . [i]t would be a perversion of the procedure to impose upon it a requirement that the child's testimony *always* be presented, regardless of the trauma resulting to the child therefrom, and regardless of the necessity of such testimony in the resolution of the issues before the court." (*Id.* at p. 1089.) *Jennifer J.* held that in

8

considering whether to exclude a child's testimony, a court must engage in "a careful weighing of the interests involved," including a parent's right to call and cross-examine witnesses. (*Id.* at p. 1086; see also *Maricela C. v. Superior Court, supra*, 66 Cal.App.4th at p. 1146 ["Due process requires a balance"].) The child's testimony can be properly be excluded where "the child's desires and wishes can be directly presented without live testimony, where the issues to be resolved would not be materially affected by the child's testimony, and where it is shown that the child would be psychologically damaged by being required to testify." (*Jennifer J.*, at pp. 1086-1087, 1089; see also *In re Amber S., supra*, 15 Cal.App.4th at pp. 1264-1265 [recognizing juvenile court's "inherent power to fashion novel procedures" after weighing impact on parent's rights against child's best interests].)

Father argues that *In re Amy M.* (1991) 232 Cal.App.3d 849 (*Amy M.*), not *Jennifer J.*, should control the outcome here. In *Amy M.*, the Sixth District Court of Appeal held that the juvenile court's refusal to require a child to testify at a jurisdictional hearing, based on an expert opinion that it would be "stressful" for the child to do so, violated the parents' due process rights. (*Amy M.*, at pp. 863-864.) But *Amy M.* involved distinguishable circumstances. In *Amy M.*, the child's testimony would have been material to a disputed issue—whether the child suffered sufficient emotional damage to find jurisdiction—because it would have allowed the juvenile court to evaluate the expert testimony on that issue. (*Id.* at p. 865.) And there was no "substitute for [the child's] testimony which might have satisfied due process." The child had not testified at previous hearings, none of his statements were in the social services agency's reports, and the juvenile court did not permit the parents' counsel or their expert to have contact with him before the hearing. (*Ibid.*)

In reaching its holding, *Jennifer J.* determined that *Amy M.* did not control. (*Jennifer J., supra*, 8 Cal.App.4th at p. 1087.) In *Jennifer J.*, the parents sought to call their daughter as a witness at the selection-and-implementation hearing, believing that "she would state a desire for continued parental contact and would evidence some level of bonding." (*Id.* at p. 1085.) The mother proposed that her daughter be excused from

9

testifying if a stipulation could be reached that the daughter would so testify if called as a witness. (*Ibid.*) Although the stipulation was ultimately not reached, the juvenile court "accepted as established" that the daughter would testify she was bonded and would like further contact with her parents. (*Id.* at p. 1087.) Thus, unlike in *Amy M.*, where "the minor's testimony could have assisted in resolving a disputed issue," in *Jennifer J.* "the facts sought to be established by the minor's testimony were in fact accepted." (*Jennifer J.*, at p. 1087.) Moreover, in *Jennifer J.* "the crucial factor" in the juvenile court's decision to free the minor for adoption was that continued contact with her parents would be detrimental, "a matter about which the minor had no knowledge, and the resolution of which would not have been aided by the minor's testimony." (*Id.* at pp. 1087-1088.)

We recognize that because this case is an appeal from jurisdictional and dispositional findings, its procedural posture is closer to the one in *Amy M.*, which also involved a jurisdictional hearing, than it is to the one in *Jennifer J.*, which involved a hearing to terminate parental rights. But *Jennifer J.*'s logic is not limited to that particular stage of a dependency proceeding. The decision affirmed the exclusion of testimony based on the "overriding objective" of protecting a child's best interests (*Jennifer J., supra*, 8 Cal.App.4th at p. 1089), which applies at *all* stages of a dependency proceeding.[3] Potential trauma to a child is no less of a concern when deciding issues other than whether to terminate parental rights.[4]

---

[3] We need not consider how the analysis might be affected when a child witness is not the subject of the dependency case and protecting that child's best interests is not the primary consideration. Father does not argue for any distinction between Daniela and stepdaughter on this ground, and in any event stepdaughter had also recently been involved in dependency proceedings.

[4] To be sure, the procedural posture of a case may affect the analysis. For example, *Jennifer J.* approved the exclusion of a child's testimony where "the child's desires and wishes can be directly presented without live testimony" (*Jennifer J., supra*, 8 Cal.App.4th at p. 1089), but here the girls' wishes were not relevant to the jurisdictional issue. Given its broader logic, however, we do not read *Jennifer J.* to hold that excluding a child's testimony is appropriate to avoid trauma to the child *only* where the particular circumstances it identified are present.

10

In attempting to distinguish *Jennifer J.*, father emphasizes that stepdaughter's "claim of sexual abuse" was disputed, and we understand that whether visitation with father would be detrimental to Daniela was also disputed. But even if a child's testimony might touch upon a disputed issue, *Jennifer J.* authorizes the exclusion of that testimony "where the issue to be resolved would not be *materially affected* by the child's testimony." (*Jennifer J., supra*, 8 Cal.App.4th at p. 1089, italics added.) This standard was met as to Daniela's testimony and, while a closer call, as to stepdaughter's testimony as well.

Father argues that cross-examination of Daniela was "critical" because her "hearsay statements . . . formed the basis of the allegations against [him]." He also suggests that her testimony would bear on whether she was "distressed" around him and thus whether he should be permitted visitation. But Daniela's testimony would not have helped to resolve any disputed issue. Daniela never said that father had sexually abused her or stepdaughter. She said only that she sometimes gave him massages, and father never denied this behavior. Nor did father deny any of the details, as reported by both stepdaughter and the girls' uncle, about the incident in which father and Daniela were in bed together. In addition, the court's determination that visitation was inappropriate was based primarily on father's failure to show even a "slight understanding of the horror of what he perpetrated on these two little girls," not on Daniela's expressed wishes. (See *Jennifer J., supra*, 8 Cal.App.4th at p. 1088.) And Daniela's statement during her CASARC interview that she would miss father if separated from him was in evidence anyway. (See *id.* at p. 1087.) Thus, Daniela's testimony would not have materially affected the court's resolution of either the jurisdictional or the visitation issue.

Father also argues that cross-examination of stepdaughter was critical because the key disputed issue was whether he sexually abused her. We agree that stepdaughter's allegations went to the heart of the case, but father fails to persuade us that her testimony would have materially affected the juvenile court's evaluation of the truth of the allegations. The Agency's reports contained father's general denial of abusing stepdaughter, but he did not testify or challenge any specific details of her allegations.

11

Nor, in urging that she testify, did he identify any basis on which he hoped to impeach her. In contrast, stepdaughter described the sexual abuse in significant detail in her CASARC interview, and the juvenile court found her statements to be extremely credible. In many cases, a court will not be able to rely on *Jennifer J.* to exclude a child from testifying because the testimony while subject to cross-examination may materially affect the assessment of the child's credibility. But where, as here, the child describes abuse in out-of-court statements the court finds credible, and the alleged perpetrator denies the abuse but does not suggest how the child could be impeached, the court can reasonably conclude that forcing the child to testify would not materially affect its credibility assessment.

Having rejected father's claim that *Jennifer J.* is inapplicable because the girls' testimony would have materially affected the resolution of disputed issues, we have no trouble concluding there was sufficient evidence that the girls would have been psychologically harmed by testifying. (See *Jennifer J., supra*, 8 Cal.App.4th at p. 1089.) As to Daniela, father claims that her CASARC interview does not suggest she was emotionally affected by his actions and that no witness opined that it would be harmful for her to testify. In fact, the social worker for this case stated that testifying would be "extremely detrimental" for Daniela. In addition, Daniela's CANS assessment reported that she was having difficulty processing "her feelings and . . . the recent loss of her father living with the family," resulting in "what appears to be an indifferent response to this loss." She was also exhibiting increased anxiety, including eating more. Taken as a whole, this evidence was sufficient to support the determination that Daniela would be traumatized by having to testify.

As to stepdaughter, father acknowledges that both the first social worker and the clinician opined that testifying in court would be detrimental to stepdaughter. He argues that there was nevertheless insufficient evidence of psychological harm because there was no testimony about that issue by "a physician and surgeon, including a psychiatrist, or any person described by subdivision (b), (c), or (e) of Section 1010" as required under section 240. (§ 240, subd. (c).) But as we have said, a child's testimony may be

12

excluded under *Jennifer J.* even if the requirements for a finding of unavailability under section 240 are not met. Father also complains that the social worker's and clinician's statements about stepdaughter were limited to the harm she would experience from testifying in front of him, but this argument is forfeited because he did not raise the possibility of in-chambers testimony below. Father offers no other reason these witnesses' opinions were insufficient evidence that stepdaughter would be traumatized if she had to testify in court, and he therefore fails to demonstrate that the exclusion of stepdaughter's testimony was erroneous. In sum, we conclude that the juvenile court properly balanced father's due process rights against the resulting trauma to the girls to excuse them from testifying. (See *Jennifer J., supra*, 8 Cal.App.4th at p. 1089.)

### III.
### DISPOSITION

The juvenile court's July 24, 2017 order is affirmed.

_____

Humes, P.J.

We concur:

_____

Margulies, J.

_____

Banke, J.

*In re Daniela G.*  A152434

14

Trial Court:

> Superior Court of the County of San Francisco

Trial Judge:

> Hon. Susan M. Breall

Counsel for Defendant and Appellant:

> Joseph T. Tavano, First District Appellate Project

Counsel for Plaintiff and Respondent:

> Dennis J. Herrera, City Attorney

> Kimiko Burton, Lead Attorney

> Elizabeth McDonald Muniz, Deputy City Attorney

*In re Daniela G.* A152434