Filed 7/10/23  In re J.P. CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.P., a Person Coming Under the Juvenile Court Law. | H049923 (Santa Clara County Super. Ct. No. 21-JD-026875) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. E.P. et al., Defendants and Appellants. | |

The parents in this dependency case contend the juvenile court abused its discretion by quashing a subpoena that would have required the six-year-old boy who is the subject of the proceedings to testify at the jurisdictional hearing.  Finding no abuse of discretion, we will affirm.

## I.  BACKGROUND

The Santa Clara County Department of Family and Children's Services initiated dependency proceedings after a report of domestic violence between the father and mother in the presence of their six-year-old son, J.P.  The father reportedly strangled the mother until she lost consciousness.  The Department filed a petition under Welfare and Institutions Code section 300 alleging J.P. was at risk because of domestic violence and the father's untreated substance abuse issues.  J.P. was detained, removed from his

father's custody, and placed with his mother. He was soon afterward removed from her custody and placed in foster care when the Department learned the father had resumed living in the family home. After a jurisdictional and dispositional hearing, the juvenile court sustained the allegations of the petition and ordered reunification services. J.P. continued at his foster placement with both parents allowed supervised visits.

Once the mother moved to her own home away from the father, she was allowed unsupervised and eventually overnight visits with J.P. But J.P. told social workers the visits were "very bad." He said his mother hit him (demonstrating with an open hand) when he misbehaves and had a boyfriend whom she " 'kisses all day' " and with whom she sometimes fought in front of J.P. Then J.P. told his foster mother he was being sexually abused during the visits. He said his father was back in the house and the parents had intercourse while J.P. was in bed with them, licked J.P.'s private parts, and he did not want to lick his father's "pino" anymore. When asked what a pino is, J.P. pointed to his penis. He said his father touched him and liked to lick his butt and private parts. In a later interview with a forensic analyst trained in interviewing child sexual abuse victims, J.P. reported that his mother showered with him and would grab his hand and put it on her private parts.

In an interview with a police officer, J.P. drew a stick figure showing his mother had touched him in the area between his legs. He said his parents told him not to tell anyone about anything they did and his father said he would stop buying him things if he told anyone. J.P. also spoke with a therapist and described being touched on his private parts. Both parents denied engaging in any such conduct but were arrested and criminally charged.

The Department filed a second dependency petition alleging J.P. was at risk because of sexual abuse. A contested jurisdictional hearing was set regarding the new petition. The father's counsel subpoenaed J.P. to testify at the hearing and J.P.'s counsel moved to quash the subpoena. The juvenile court granted the motion to quash, finding

the potential for psychological harm to J.P. outweighed the need for his testimony, given that he had already described the alleged abuse in detail during multiple interviews.

At a combined jurisdictional and dispositional hearing, the court heard testimony from a social worker detailing J.P.'s allegations of sexual abuse and from J.P.'s therapist describing emotional trauma the abuse caused. The father testified and denied abusing J.P., saying J.P. had been coached into making the allegations. The juvenile court sustained the petition and issued dispositional orders for the continued removal of J.P. from his parents' care, supervised virtual visitation, and counseling and treatment programs for the parents.

## II. DISCUSSION

The parents contend the juvenile court erred by quashing the subpoena for J.P. to testify at the jurisdictional hearing. After carefully weighing the interests involved, a juvenile court may exclude even relevant and otherwise admissible testimony of a child who is the subject of dependency proceedings if the child would be psychologically damaged by testifying and the testimony would not materially affect the issues to be resolved. (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1089.) That power derives "from a recognition of the overriding objective of the dependency hearing—to preserve and promote the best interests of the child. It would be a perversion of the procedure to impose upon [the juvenile court] a requirement that the child's testimony *always* be presented, regardless of the trauma resulting to the child therefrom, and regardless of the necessity of such testimony in the resolution of the issues before the court." (*Ibid.*)

Because the juvenile court must evaluate the competing interests and determine whether psychological harm outweighs the need for the child's testimony, we review the court's decision for abuse of discretion. (*In re Daniela G.* (2018) 23 Cal.App.5th 1083, 1090.) Under that deferential standard, we affirm the ruling unless it is outside the range of permissible options afforded by the applicable law or the court acted arbitrarily or

3

irrationally. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

We see no abuse of discretion here. In considering the motion to quash, the juvenile court observed on the record that J.P. "is very young, six years old, and diagnosed with PTSD, which is relatively rare in such a young child. And the evidence indicates that [he] already has severe emotional distress and is experiencing night terrors and is showing signs of having been severely traumatized … given that [he] has already been asked these questions at least once, and maybe multiple times, and given that there has been a forensic interview conducted by people qualified to ask questions of children, I don't really see much of a need for him to testify here, given that the information has already been provided and that's counterbalanced with the psychological detriment that would likely happen if he is forced to talk about these traumatizing events yet again." The court's comments show that it weighed the appropriate considerations and that its decision was the product of rational thought and not arbitrary.

The parents emphasize the importance of J.P.'s testimony to their case and argue that if he were allowed to testify they could explore inconsistencies in his reports that might cause the court to view the abuse allegations as less credible. But as the juvenile court noted, J.P. had already been interviewed multiple times about the abuse allegations, diminishing the need for his testimony. And even though J.P.'s credibility is highly important to the parents' position, it is not an abuse of discretion to decide that the potential for psychological harm to him justifies quashing the subpoena. Given that the overriding objective in a dependency proceeding is safeguarding the child's best interests, it is not an abuse of discretion for the juvenile court to prioritize J.P.'s wellbeing "regardless of the necessity" of his testimony. (*In re Jennifer J.*, *supra*, 8 Cal.App.4th 1083, 1089.)

The parents advance two other reasons for their position that the court abused its discretion. They assert there is an insufficient evidentiary basis for the finding that J.P.

4

would suffer psychological harm. But the record contains ample evidence to support that finding. The juvenile court indicated it was relying on the declarations of J.P.'s therapist and the assigned social worker, both of which say J.P. would by psychologically harmed were he required to testify.

The parents fault the juvenile court for not considering less restrictive options, such as allowing J.P. to testify in chambers. The record also belies that assertion. The juvenile court specifically stated it had considered the possibility of alternative ways to obtain J.P.'s testimony: "Even if [J.P.] were questioned in chambers with only attorneys present or only a select number of people present in a less intimidating environment, still asking these same types of questions, appears to me to be likely to be further traumatizing."

The juvenile court did not abuse its discretion in deciding that potential psychological harm to the child outweighed the need for his testimony in this proceeding.

## III.    DISPOSITION

The orders are affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

**H049923**

*In re J.P.; DFCS v. E.P. et al.*