Filed 2/15/24  In re Michael W. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re MICHAEL W. III, a Person Coming Under the Juvenile Court Law. | B320988<br><br>(Los Angeles County Super. Ct. No. 22CCJP01094) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>MICHAEL W., JR.,<br><br>      Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Pete R. Navarro, Juvenile Court Referee.  Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. McCurley, under appointment by the Court of Appeal, for minor Michael W. III.

No appearance for Plaintiff and Respondent Los Angeles County Department of Children and Family Services.

_____

Michael W., Jr., (Father) appeals from the jurisdiction findings and disposition order declaring five-year-old Michael W. III a dependent of the juvenile court and terminating jurisdiction with a juvenile custody order awarding sole physical custody of Michael to Stephanie B. (Mother) after the court sustained allegations under Welfare and Institutions Code section 300, former subdivision (b)(1),[1] that Father created an endangering home environment by using and selling methamphetamine in the hotel room where Father and Michael were staying. Father contends the juvenile court abused its discretion and violated his due process rights by denying Father's motion to have Michael testify at the jurisdiction and disposition hearing.[2] We affirm.

_____

[1] The Legislature amended Welfare and Institutions Code section 300, effective January 1, 2023, in part by revising subdivision (b)(1) to specify in separate subparagraphs ways in which a child may come within the jurisdiction of the juvenile court due to the failure or inability of the child's parent or guardian to adequately supervise or care for the child. Further statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Referral, Investigation, and Petition*

Michael was born in November 2016. Pursuant to a 2021 family law order, Father and Mother had joint legal custody of Michael; Father had primary physical custody, and Mother had visitation every other weekend.

On March 20, 2022 the Los Angeles County Department of Children and Family Services (Department) received an emergency response referral alleging Father had been arrested and Michael had been taken into police custody after police found a large amount of methamphetamine and a pipe in Father's Glendale hotel room. Officer Thompkins of the Glendale Police Department told the Department social worker that someone contacted the police to report there was a loaded firearm accessible to a child in the hotel room. Responding officers did not find a gun in the room;[3] however, Officer Thompkins found "'a lot of'" methamphetamine on the counter in front of the television. The March 20 police report stated the methamphetamine was in the form of white crystals inside a red pill bottle in plain view and "easily accessible to a small child." Next to the bottle, Officer Thompkins also found a digital scale and a glass pipe with a bulbous end and burnt residue that he recognized as paraphernalia used to smoke methamphetamine. The call to the police had been made by Amber Schmutz, a woman who had recently been paroled and was staying in the hotel room with Father and Michael.

---

[3]  A gun registered to Father was found in Father's car, secured with a lock.

The social worker interviewed Michael at the Glendale police station on March 20. Michael appeared to be clean, well-nourished, and properly dressed, and he did not have any visible marks or bruises. Michael denied any abuse and told the social worker he lived with Father and visited with Mother, and he felt safe in Father's care. He reported that Father smoked brown-and-white cigarettes, but Father did not snort anything or inject himself with a needle. Michael denied seeing any drugs or drug paraphernalia in the hotel room.

On March 21 the social worker spoke with Mother, who lives in Barstow. Mother reported she and Father were never married and their relationship had ended years earlier because Father was not providing financial support. Mother suspected Father had been involved with crack cocaine and marijuana during their relationship. She also suspected Father was using and selling drugs because she had seen drugs and drug paraphernalia in Father's possession. Mother stated the family court gave Father primary custody of Michael because Mother had assaulted someone in the past, and Father used this fact against her in court. The social worker visited Michael in Mother's home on March 22 and found the boy was comfortable in the home and in Mother's presence.

On March 22 the social worker visited Father in jail. Father denied ever using methamphetamine, selling drugs, or having a substance abuse problem. He said he allowed another resident at the hotel to use his bathroom while he and Michael were out. Father had primary physical custody of Michael because Mother had been arrested and incarcerated for

assaulting someone with a knife, and after her release, Mother "'gave'" Michael to him.[4]

On March 23, 2022 the Department filed a petition on behalf of Michael under section 300, former subdivision (b)(1), alleging Father created a detrimental and endangering home environment for Michael after methamphetamine had been located in the home within Michael's access on March 20, 2022, and Father had been arrested for child endangerment and possession with intent to sell (count b-1). The petition further alleged Father had a history of substance abuse, including cocaine and marijuana, which interfered with his ability to provide regular care and supervision of Michael, and Mother knew and failed to protect Michael from Father's substance abuse (count b-2).

At the March 28 detention hearing, the juvenile court admitted the Los Angeles County Sheriff's "Inmate Information" report stating Father was released from jail on March 25 after the district attorney rejected his case for prosecution. The court ordered Michael detained from Father and released to Mother under Department supervision. The court granted Father monitored visitation for two hours, twice weekly, with the Department having discretion to liberalize.

B.    *The Jurisdiction and Disposition Report*

As described in the April 21, 2022 jurisdiction and disposition report, on April 18 the dependency investigator

---

[4]    Mother's criminal history included a 2014 arrest for assault with a deadly weapon (not a firearm), for which she was sentenced to three years in state prison. Father did not have a criminal history.

interviewed Michael, who was living with Mother in Barstow. As to the March 20 incident, Michael stated, "'When my dad and I were at the hotel we met a lady named Amber. Our hotel room had two beds. I would sleep on one bed, and my dad and Amber would sleep on the other bed. They were boyfriend and girlfriend. Amber smoked weed and I would see it all over the table. My dad smokes weed too. . . . One day, I was at the park with my friend Brian and then my dad came and we were going back to the hotel. When we got there the police [were] there. . . . Amber called the police because she got mad at my dad for kicking her out. She was being too loud and my dad got mad. I never saw my dad sell any drugs or use any scales to weigh anything.'" Michael was shown a picture of a glass methamphetamine pipe and asked if he'd ever seen Father use one. He responded, "'I've seen that before. My dad used that when we were living at my grandma's house but I don't remember how long ago. He didn't have that at the hotel. He was just smoking weed and cigarettes.'" Michael also stated, "'I miss my dad. I want to live with him. I like living with him.'"

Father told the dependency investigator he and Michael had been staying at the hotel for 17 days while on a waitlist for affordable housing. Father met Amber at the hotel. Amber told him her hotel room did not have a bathtub, so Father let her use his bathroom. On March 20 Father was shuttling between the hotel and paternal great-aunt's house, where he planned to relocate with Michael the following day. Amber asked Father again if she could use the bathtub in his room, and she came in with a bag. When Father and Michael returned to the hotel later that day, police were present and asked to look in the hotel room; Father agreed. When the police told Father they found

methamphetamine in the room, Father told them it must have belonged to Amber, who was "'nowhere to be found.'" Father told the dependency investigator, "'I don't know why Amber would leave those drugs in my room. . . . Those drugs were hers, not mine, and it was never around my son.'" Father denied using drugs and noted that he had never been arrested on any drug-related charges. He said, "'I only smoke marijuana once a month and I'll have a beer every now and then. I don't have any substance abuse history.'"

Mother told the dependency investigator she and Father had mutual friends who "'would tell me that they met with [Father] and he looked high.'" Mother had "'never seen [Father] like that,'" and Michael had never said anything about Father using drugs or "'anything concerning.'" In contrast to her earlier statement to the social worker, Mother now reported she was only aware of Father smoking marijuana, it was never an issue when they were together, and she "didn't know about [Father] using any other substances." Mother stated, "'I don't have any concrete evidence that [Father] was involved with drugs[;] I only had my suspicions.'" Mother felt Michael expressed a desire to live with Father because Father would let him do whatever he wanted, and Michael had some behavioral issues as a result.

C.    *Father's Motion To Allow Michael To Testify*

At the April 25, 2022 jurisdiction and disposition hearing, Father's attorney requested a continuance of the hearing so he could obtain an order compelling Michael to appear in court and testify. The attorney explained that she had no objection to Michael testifying in chambers, but she needed to cross-examine Michael about his statements in the detention and jurisdiction

reports. The juvenile court found that in light of Michael being only five years old, Father's request would need to be the subject of a pretrial motion. The court set a hearing on the motion and continued the jurisdiction and disposition hearing. The court ordered Mother to bring Michael to court for the May 24 jurisdiction and disposition hearing.

In his motion to allow Michael to testify, Father argued Michael's testimony was essential because he was the only witness who could testify to Father's alleged drug use[5] and Michael gave "inconsistent" reports of Father's drug use in his interviews with the Department, initially telling the social worker he had never seen Father snort or inject drugs and that he had only seen Father smoke cigarettes, but later saying he had seen Father and Amber smoke "weed" and had seen a glass pipe in Father's possession in the past (although not at the hotel). Moreover, there was no evidence that requiring Michael to testify in chambers "for the limited purpose of protecting Father's due process rights with regard to Father's substance abuse would severely impact Michael's mental health."

At the May 11 hearing on Father's motion, the juvenile court asked Father's attorney to identify the relevance of Michael's testimony. The attorney argued Michael's testimony "goes specifically as to the b-2 count" (alleging Father's use of cocaine and marijuana) because of Michael's changing statements, with him now saying Father used "'weed.'" Moreover, it was only in the later interview that Michael reported Amber spent time in the hotel room with Father. Thus,

---

[5] Father's attorney stated she did not have contact information to subpoena Amber, who had moved out of the hotel.

8

Father needed to examine Michael about why his statement changed and "to see if [Michael] really does understand what he's saying" in using the term "weed." Pressed by the court as to why the testimony was relevant in light of Father's admission he used marijuana and the police's identification of methamphetamine in the hotel room, the attorney argued "the testimony goes to the entirety of the allegation" because Michael also testified Amber spent time in the hotel room with Father, which was "relevant to the allegation in [count] b-2." Minor's counsel objected to Michael testifying but did not present any argument, and the Department took no position.

The juvenile court ruled, "If the court finds that there's merit to a link between marijuana use and neglect of this child, then the court will entertain your renewed request to examine the child." The court added, "[A]nytime you force a child to testify, it's an intimidating situation and often times unnecessary, and I don't wish to force a five year old to testify if it's not needed at this stage, but I will take a look in the course of the adjudication to hear further arguments as evidence develops." The court concluded, "[D]epending how the trial plays out, I may allow [Michael] to be cross-examined, but at this stage, I'd need an offer of proof as to why his testimony would be relevant."

D.    *The Jurisdiction and Disposition Hearing*

At the May 24, 2022 jurisdiction and disposition hearing, the juvenile court admitted into evidence the Department's reports and the inmate information statement showing the district attorney had rejected Father's arrest charges. With respect to Michael's appearance, Father's attorney requested the court incorporate the arguments from the May 11 hearing, but

9

she did not make an offer of proof as to Michael's testimony. The court found there was "no valid basis to force the child to be examined, notwithstanding any statement by the child. The court views that there is information to support the sustaining of a petition, even without that child's words or statements."

Father's attorney asked the juvenile court to dismiss the petition, arguing with respect to count b-1 that Father had cooperated with law enforcement, the district attorney declined to prosecute, and Father credibly explained the methamphetamine belonged to Amber and he knew nothing about it. Moreover, even though the methamphetamine was on the counter in the hotel room, the drugs were not "readily accessible" to Michael because they were in a child-proof pill bottle. Minor's counsel requested the court sustain the petition in its entirety, arguing as to count b-1 that Father's explanation for the presence of methamphetamine was not credible because Father's police interview clearly indicated he was familiar with Amber, her use of drugs, and her recent parole, yet he allowed Amber to be around Michael. The Department noted that the police report also indicated a digital scale had been found in the room, so there was "overwhelming evidence that there is more to Father's counsel's story tha[n] meets the eye.'"

After hearing argument, the juvenile court sustained count b-1 as amended, which alleged Father created a detrimental and endangering home environment for Michael "by his use and sales of methamphetamine. On 3/20/22, a scale, and a bulbous smoking pipe were found within access to the child in the motel room where father was staying." The court found "[t]he fact that there is a scale there, that indicates sales. Sales is inherently a dangerous activity . . . and to have a five-year-old

10

child present is inherently a dangerous situation.  This Amber person appears to be involved in . . . use or sales or both.  But the activities that Father exposed this child to were such that they posed a substantial risk to this child."  The court dismissed count b-2 concerning Father's alleged substance abuse and Mother's failure to protect.

The juvenile court declared Michael a dependent of the court, removed him from Father's custody, and placed him with Mother.  The court found there was no need for continued dependency jurisdiction and terminated jurisdiction subject to receiving a final custody order granting Mother sole physical custody (with joint legal custody) and monitored visitation for Father.  On June 1, 2022 the court received and signed a juvenile custody order and terminated jurisdiction.

Father timely appealed.[6]

## DISCUSSION

Father's sole contention on appeal is that the juvenile court abused its discretion and violated his due process rights by denying his motion to allow Michael to testify at the jurisdiction and disposition hearing.  Father does not contend the court's jurisdiction findings were not supported by substantial evidence.  Nor does he argue the court abused its discretion in entering the

---

[6]    Father's notice of appeal states he is appealing from the juvenile court's May 11 order on his request for Michael's testimony; the May 24 jurisdiction and disposition hearing; and the June 1 juvenile custody order.  However, as we discuss, Father only argues in his opening brief that the juvenile court abused its discretion in disallowing Michael's testimony.

11

disposition order, order terminating jurisdiction, or juvenile custody order.

A.  *Governing Law and Standard of Review*

"'Parents have a fundamental liberty interest in the care, custody, and management of their children.'" (*In re Daniela G.* (2018) 23 Cal.App.5th 1083, 1092 (*Daniela G.*); accord, *David B. v. Superior Court* (2006) 140 Cal.App.4th 772, 777.)  "Unlike a criminal defendant, a parent in a dependency proceeding does not have a right 'to full confrontation and cross-examination' under the Sixth Amendment of the federal Constitution or article I, section 15 of the California Constitution." (*Daniela G.*, at p. 1092, quoting *In re Sade C.* (1996) 13 Cal.4th 952, 991-992.) However, the parent does have "'a due process right to a meaningful hearing with the opportunity to present evidence,' including a right to confrontation and cross-examination of witnesses." (*Daniela G.*, at p. 1092; see § 341 [authorizing subpoenas "requiring attendance and testimony of witnesses and production of papers at any hearing regarding a child who is alleged or determined by the court to be a person described by Section 300"].)

A parent's right to present evidence "'is not unlimited, but rather is subject to reasonable restrictions.'" (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 133; see *In re Grace P.* (2017) 8 Cal.App.5th 605, 612 [parent's procedural rights are subject to "evidentiary principles"]; *Jeanette V.* (1998) 68 Cal.App.4th 811, 817 [parent's "due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court"]; *In re L.J.* (2023) 89 Cal.App.5th 741, 754 [same].)  Reasonable restrictions include precluding a parent

from introducing evidence that lacks "significant probative value to [an issue] before the court" (*Jordan R.*, at p. 133), and evidence that would necessitate an undue consumption of time (*M.T. v. Superior Court* (2009) 178 Cal.App.4th 1170, 1181). And "'[e]ven where cross-examination is involved, the trial court may properly request an offer of proof if an entire line of cross-examination appears to the court to be irrelevant to the issue before the court.'" (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1120.) In short, "'the ordinary rules of evidence do not impermissibly infringe on the . . . right to present a defense.'" (*Jordan R.*, at p. 133.)

Moreover, a juvenile court has "discretion to exclude the testimony of a child in order to avoid psychological harm to the child, *even though that testimony is relevant*, the child is competent to testify, and the child is both practically and legally 'available' to testify." (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1088 (*Jennifer J.*), italics added; accord, *Daniela G., supra*, 23 Cal.App.5th at p. 1091 ["a juvenile court has discretion to refuse to require a child to testify . . . if the material effect of the child's testimony on the relevant issues is outweighed by the psychological injury the child risks by testifying"].) As the court in *Jennifer J.* explained, "This power derives . . . from 'the overriding objective of the dependency hearing—to preserve and promote the best interests of the child. It would be a perversion of the procedure to impose upon it a requirement that the child's testimony *always* be presented, regardless of the trauma resulting to the child therefrom, and regardless of the necessity of such testimony in the resolution of the issues before the court.'" (*Jennifer J.*, at p. 1089, fn. omitted; accord, *Daniela G.*, at p. 1092.) "In considering whether to exclude a child's testimony"

the juvenile court "must engage in 'a careful weighing of the interests involved,' including a parent's right to call and cross-examine witnesses." (*Daniela G.*, at p.1092, quoting *Jennifer J.* at p. 1086.) Although *Jennifer J.* involved a child's testimony at the selection and implementation hearing governed by section 366.26, the court in *Daniela G.* at page 1087 extended the principle "to apply to jurisdictional and dispositional hearings."

"We review the exclusion of a child's testimony to avoid psychological harm to the child for an abuse of discretion." (*Daniela G., supra*, 23 Cal.App.5th at p. 1090; accord, *Jennifer J., supra*, 8 Cal.App.4th at p. 1088.) "To the extent [a parent] challenges the factual findings underlying the juvenile court's ruling, our review is for substantial evidence, and to the extent [a parent's] claims raise questions of law, our review is de novo." (*Daniela G.*, at p. 1090.)

B.    *The Juvenile Court Did Not Abuse Its Discretion in Denying Father's Motion To Allow Michael To Testify*

Nothing in the record indicates Michael's testimony would have any relevance to the juvenile court's sustained jurisdiction findings and consequent orders. In sustaining count b-1 of the petition as amended, the court found Father created a detrimental and endangering home environment for Michael "by his use and sales of amphetamine" in the hotel room where Father and Michael were staying. The court based its finding on the evidence police found in the hotel room on March 20, 2022: methamphetamine, a pipe for smoking methamphetamine, and a digital scale, all within easy access of a child in the room. The court additionally found Father's explanation he was unaware of Amber's drug use in the room not credible and that Father used

14

and sold methamphetamine, but it observed that even if Amber had been solely responsible for the use and sale of the drugs as Father claimed, these activities in the room where Michael was living nonetheless endangered the child.

Michael's statements to the social workers did not provide an evidentiary basis for the juvenile court's jurisdictional findings under count b-1, and impeachment of Michael would not have exculpated Father. Indeed, Michael consistently testified he had never seen Father use drugs other than "weed" or cigarettes; he never saw the methamphetamine pipe in the hotel room; and he did not see Father or Amber use methamphetamine.[7] Moreover, in his motion to allow Michael to testify and at the May 11 hearing, Father only argued he needed to cross-examine Michael about the inconsistencies in his interviews and understanding of the term "weed" in connection with the drug-abuse allegations in count b-2, which was dismissed. In his opening brief on appeal, Father likewise argues only that Michael's testimony is relevant to count b-2.[8]

---

[7] Michael's statement that he had seen a methamphetamine pipe in Father's possession at the paternal grandmother's house at some point in the past could have had some relevance at the hearing, but the juvenile court based its jurisdiction finding only on the March 20, 2022 incident, not any prior methamphetamine use. Given that the court did not rely on the prior incident, there was no value in Father impeaching Michael on this point.

[8] In his reply brief, Father argues Michael's testimony was also relevant to count b-1 because "the child was living with [F]ather at the time the police were involved, and had valuable information regarding the detrimental and endangering home environment [F]ather created . . . . The child's testimony was the

Further, at the jurisdiction hearing, the juvenile court invited Father's attorney to make an offer of proof if she felt Michael's testimony was relevant in light of the evidence presented, but she did not, relying on the arguments she made on May 11. (*In re Tamika T., supra*, 97 Cal.App.4th at p. 1120 [court may require offer of proof before admitting evidence].) Because Michael's in-court testimony had no demonstrable relevance, and Father declined to make an offer of proof, the court's evidentiary ruling excluding Michael's testimony did not violate Father's due process rights. (*Ibid.*; *Jeanette V., supra*, 68 Cal.App.4th at p. 817; see *In re Jordan R., supra*, 205 Cal.App.4th at p. 133.)

Father contends the juvenile court erred in failing to balance the relevance of Michael's testimony against the psychological harm that testifying might cause to Michael, distinguishing *Daniela G.*, in which the court excluded the testimony of the father's 13-year-old stepdaughter and eight-year-old-daughter in a case alleging Father's sexual molestation and grooming of the girls. (*Daniela G., supra*, 23 Cal.App.5th at p. 1086.) The court in *Daniela* balanced the limited relevance of the girls' testimony under the circumstances of the case—the daughter never claimed any sexual abuse occurred; the stepdaughter detailed the abuse, but the father failed to identify

_____

best evidence; the police report was secondary." However, as discussed, Michael's prior statements denied Father (and Amber) used or sold methamphetamine in the hotel room, and Michael had no additional information because police were already at the hotel when Father and Michael returned, Amber was nowhere to be found, and Michael was outside when the police found the methamphetamine and paraphernalia.

how he could impeach her (*id*. at pp. 1086, 1094-1095)—with the potential for harm, and "ha[d] no trouble concluding there was sufficient evidence that the girls would have been psychologically harmed by testifying." (*Id*. at p. 1095.) As to the daughter, for example, a social worker reported that testifying would be "'extremely detrimental,'" and an assessment showed the daughter was having difficulty processing her feelings from being separated from her father and was showing increased anxiety. (*Ibid*.) The court concluded, "[T]aken as a whole, this evidence was sufficient to support the determination that Daniela would be traumatized by having to testify." (*Ibid*.)

Here, in denying father's motion, the juvenile court concluded that "anytime you force a child to testify, it's an intimidating situation and often times unnecessary, and I don't wish to force a five year old to testify if it's not needed at this stage." We agree with Father that, unlike in *Daniela G., supra*, 23 Cal.App.5th at page 1095, the Department and minor's counsel did not introduce any evidence Michael would be harmed by testifying. Had this been a case where Father made any showing that Michael's testimony was relevant, we might have concluded the juvenile court abused its discretion in assuming a five-year-old child would always be harmed in the absence of any evidence specific to this case. But on this record, in the absence of any relevance of Michael's testimony, the court did not abuse its discretion in concluding that the possibility of some harm to Michael from testifying, even in chambers, outweighed "the material effect of the child's testimony on the relevant issues." (*Daniela G.*, at p. 1091; see *Jennifer J., supra*, 8 Cal.App.4th at p. 1088.)

17

## DISPOSITION

The juvenile court's May 11, 2022 order denying Father's request for Michael to testify at the jurisdiction and disposition hearing, the May 24 jurisdiction findings and disposition order, and the June 1 juvenile custody order are affirmed.

FEUER, J.

We concur:

SEGAL, Acting P. J.

MARTINEZ, J.