Filed 7/21/25  In re H.R. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re H.R., a Person Coming Under the Juvenile Court Law. | 2d Juv. Nos. B341262, B343097 (Super. Ct. No. J073030) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  K.R.,  Defendant and Appellant. | |

K.R. (Mother) appeals from the juvenile court's denial of modification of a court order (Welf. & Inst. Code,[1] § 388) and termination of parental rights to her daughter, H.R. (§ 366.26).

---

[1] Subsequent undesignated statutory references are to the Welfare and Institutions Code.

She contends the juvenile court abused its discretion when it denied her request to modify a previous order denying a bonding study and declined to continue the section 366.26 hearing. Mother also contends the court erred when it found the parental-benefit exception inapplicable. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Mother and Father, G.R.A., have a history of substance abuse that periodically interfered with their ability to provide H.R. with adequate care and supervision. Ventura County Human Services Agency (HSA) directed Mother to prevent Father, a drug user and fugitive from criminal charges, from having contact with H.R.

In January 2022, a search warrant was served at Father's home. Fentanyl, methamphetamines, and pipes were on the floor. Two weeks later, when H.R. was seven months old, she was removed from Mother's custody and placed with relative caregivers, where she remains. In April 2022, the juvenile court sustained a dependency petition (§ 300, subds. (b)(1) & (j)) and ordered that Mother receive reunification services.

Mother's visitation with H.R. progressed from supervised to monitored to unsupervised to overnight visits to extended stays each Tuesday morning through Friday afternoon. But Mother was dishonest to HSA about Father not having contact with H.R. Mother left H.R. with Father and he was routinely present during Mother's overnight visits with H.R.

In January 2024, Mother was evicted from an apartment where she was staying with Father. After Mother failed to respond to multiple knocks on the door, a maintenance worker began drilling the lock. H.R. was in Mother's arms and cried throughout the eviction process.

The following day, police surrounded a motel room where Father, Mother, and H.R. were staying. Mother was taken to an HSA office and arrested for harboring, concealing, and aiding a felon. H.R., who was on an extended visit with Mother, was present during the arrest, and was visibly upset when HSA took her from Mother's lap. Visitation reverted to supervised. Mother pleaded guilty to accessory after the fact (Pen. Code, § 32).

At the 18-month review hearing in February 2024, reunification services were terminated. In July, Mother tested positive for methamphetamine and was sentenced to 30 days in jail. Supervised visits were suspended for six weeks.

*Bonding study*

At the 18-month review hearing, Mother requested the court appoint an expert to conduct a bonding study, or allow her to hire an expert at her own expense to conduct the study. The request was denied. Mother did not appeal that order.

Six months later, Mother petitioned to change the order. (§ 388.) The court denied the petition. Mother appealed the denial.

*Continuance request*

The day before the section 366.26 permanency hearing began, Mother moved to continue the hearing to obtain the appearance of an HSA case aide. The court deferred ruling until the completion of other evidence in the section 366.26 hearing. At the end of the hearing, the aide was still unavailable, and the court denied the continuance.

*Section 366.26 hearing*

Six witnesses including Mother testified at the permanency hearing (§ 366.26). The court found that H.R. was likely to be adopted, HSA provided Mother with reasonable services, and

Mother did not establish the parental-benefit exception to adoption (§ 366.26, subd. (c)(1)(B)(i)). The court terminated Mother's parental rights and selected adoption as the permanent plan. Mother appealed.

## DISCUSSION

### *Petition to change order regarding bonding study*

Mother contends the court abused its discretion when it denied her petition to change the order denying her request for a bonding study. We disagree.

### *1. Law regarding bonding studies*

The juvenile court may "appoint an expert . . . 'to illuminate the intricacies of the parent-child bond so that the question of detriment to the child may be fully explored.' " (*In re M.V.* (2025) 109 Cal.App.5th 486, 509.) "[O]ften expert psychologists who have observed the child and parent and can synthesize others' observations will be an important source of information about the psychological importance of the relationship for the child." (*In re Caden C.* (2021) 11 Cal.5th 614, 632–633 (*Caden C.*).) Whether to order a bonding study is within the juvenile court's discretion. (*In re P.S.* (2024) 107 Cal.App.5th 541, 553.) "[P]arents are not automatically entitled to the appointment of a bonding expert" but "a sufficient need for one must be shown." (*Id.* at p. 559.) "Trial courts should seriously consider, where requested and appropriate, allowing for a bonding study or other relevant expert testimony." (*Caden C.*, at p. 633, fn. 4.)

### *2. Original request*

At the 18-month review hearing, Mother requested the court appoint an expert to conduct a bonding study. The court denied the request because it would not assist the court based on the significant amount of information in the HSA reports

4

regarding visitation.

Mother then requested permission to hire an expert at her own expense to conduct a bonding study to assist in her defense. HSA argued that if Mother conducted a bonding study, HSA should be able to do one as well, and it would not be in H.R.'s interest to participate in "dueling bonding studies." The court denied the request because H.R.'s life was "well documented," and the potential trauma to H.R. would outweigh any evidence that would benefit the court.

Because Mother did not appeal the original order denying a bonding study, that order may not be challenged in the present appeal. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018.)

### 3. Petition to change order

Six months later, Mother petitioned to change the order (§ 388). The petition alleged that HSA's section 366.26 report and two later memoranda documented additional visits but "are inadequate to satisfy the statutory requirements for an adoption assessment and lack pivotal information regarding the quality of the child's relationship with her mother, or even the nature of her interactions with her (mother) during visitation." Mother stated the reports did not include H.R. reaching out to hold her hand and to be picked up, sitting in her lap, or wishing to stay with Mother at the end of visits.

"Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made." (§ 388, subd. (a)(1).) "The change in circumstances supporting a section 388 petition must be material" and " 'substantial.' " (*In re N.F.* (2021) 68 Cal.App.5th 112, 120–121.) The court may grant a petition "only if the court finds by clear

5

and convincing evidence that the proposed change is in the best interests of the child."  (§ 388, subd. (a)(2).)

"We review the juvenile court's denial of a section 388 petition for an abuse of discretion."  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616.)  " ' ["]The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' "  (*Ibid.*)

We conclude there was no abuse of discretion here.  HSA stated that it had filed 30 reports "that addressed everything about this case including visitation."  In addition, Mother filed "Evidence of Substantial, Positive, Emotional Attachment to Establish Parental-Ben[e]fit Exception" that discussed H.R.'s close physical, emotional, and affectionate relationship with Mother, documented with photographs.

The court again found a bonding study would not assist the court as the trier of fact.  The court acknowledged "the day-to-day interactions probably aren't contained in the reports," but Mother could testify about visits when she was alone with H.R.  In our view, neither the additional visits nor the purported deficiencies in the reports were "material" or " 'substantial' " changes in circumstance.

*In re P.S.*, upon which Mother relies, does not compel a contrary conclusion.  The juvenile court there erroneously believed it could only order a bonding study to assist the court and not to assist Mother's defense.  (*In re P.S.*, *supra*, 107 Cal.App.5th at p. 555.)  But here, the court acknowledged that a bonding study could be ordered to assist Mother's defense.

The court also properly considered that a bonding study

would not be in H.R.'s interest because it would necessitate continuing the section 366.26 hearing for at least two months. "[A] parent's request for a bonding study made *after* reunification services had been terminated . . . risk[s] delaying the permanency process." (*In re P.S.*, *supra*, 107 Cal.App.5th at p. 548.) The permanency hearing was scheduled to begin in six days. Although the law provides that the hearing be held within 120 days of the 18-month review (§ 366.22, subd. (a)(3)), more than seven months had already elapsed. And the hearing was already scheduled to occur more than two and a half years after H.R. was taken into custody. This was well beyond the 18-month limit of section 366.21, subdivision (g)(1).

Nor did denial of the section 388 petition deny Mother's right to due process. After the termination of reunification services, "requests to acquire additional evidence in support of a parent's claim under [the parental-benefit exception] could be asserted in nearly every dependency proceeding where the parent has maintained some contact with the child. . . . [T]he denial of a belated request for such a study is fully consistent with the scheme of the dependency statutes, and with due process." (*In re Richard C.* (1998) 68 Cal.App.4th 1191, 1197, fn. omitted, followed in *In re P.S.*, *supra*, 107 Cal.App.5th at pp. 548–549.)

*Continuance*

Mother contends the court abused its discretion when it denied her request to continue the section 366.26 hearing to secure the appearance of a witness. We again disagree.

A hearing may be continued beyond the statutory time limits upon a showing of good cause. (§ 352, subd. (a)(1) & (2).) " 'We review the juvenile court's decision to deny a continuance for abuse of discretion. [Citation.] "Discretion is abused when a

7

decision is arbitrary, capricious or patently absurd and results in a manifest miscarriage of justice." [Citation.]' " (*In re D.N.* (2020) 56 Cal.App.5th 741, 756.)

The day before the section 366.26 hearing was scheduled to begin, Mother filed a request to compel the physical presence at the hearing of an HSA case aide who had supervised visits since November or December 2022. The aide was on leave of absence but was scheduled to return four days later. Mother also moved to continue the hearing for "no more than 10 calendar days" to cross-examine the aide. The court deferred ruling until the completion of other evidence in the case.

The section 366.26 hearing was heard over the course of eight days, ending December 20, 2024. Although the aide was scheduled to return to work on January 20, 2025, there was no guarantee she would do so. Her leave of absence had begun in August 2024, had been extended five times, and could be extended further though August 2025.[2]

The court denied the continuance. The court noted "the detriment to the minor because this matter . . . has taken a considerable amount of time to get going." The court offered Mother the opportunity to testify further if she wished to rebut statements in the aide's reports.

We conclude the court did not abuse its discretion in

---

[2] HSA's counsel did not know the basis of the leave of absence and said it was "a matter of privacy." Mother suggests the court could have held an in camera hearing to determine the basis for the leave and whether the witness would be able to appear in court during her leave. Mother has forfeited this contention because she did not request it in the juvenile court. (*In re Daniela G.* (2018) 23 Cal.App.5th 1083, 1090.)

denying the continuance request.  Mother did not establish the testimony was material, noncumulative, or established facts that could not otherwise be proven.  (*Owens v. Superior Court* (1980) 28 Cal.3d 238, 250–251.)  As an offer of proof, Mother stated generally that the aide had "witnessed a lot of . . . interactions" between Mother and her children and "some things" were not in her reports, including "the suitability of the adoptive placement," an incident in which a caregiver approached Mother in an "aggressive manner" and took H.R. from her arms, and whether Mother was properly administering an iron supplement.  These matters were not material because "[w]hen it weighs whether termination would be detrimental, the court is not comparing the parent's attributes as custodial caregiver relative to those of any potential adoptive parent(s)."  (*Caden C.*, *supra*, 11 Cal.5th at p. 634.)

Moreover, Mother did not show the testimony could be obtained within a reasonable time.  (*Owens v. Superior Court*, *supra*, 28 Cal.3d at p. 251.)  "[A] continuance shall not be granted that is contrary to the interest of the minor," giving "substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."  (§ 352, subd. (a)(1).)  The section 366.26 hearing had already been continued beyond the statutory time limit, the aide was not scheduled to return for another month, and she could extend it for up to seven months beyond that.  Continuing the hearing would have been contrary to H.R.'s interest.

Mother did not have a due process right to continue the hearing.  After reunification services have been terminated, parents do not have "an unfettered due process right to confront

9

and cross-examine adverse witnesses."  (*In re Thomas R.* (2006) 145 Cal.App.4th 726, 733.)  Because Mother had the burden of proof to establish the parental-benefit exception, the court properly denied cross-examination of the case aide absent a showing of "significant probative value."  (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1122; *In re Jeanette V.* (1998) 68 Cal.App.4th 811, 817.)  Moreover, Mother cross-examined the social worker who prepared the section 366.26 report, her supervisor, and all witnesses called by HSA.  This provided due process through "a 'meaningful opportunity to cross-examine and controvert the contents of the report.' "  (*Jeanette V.*, at p. 816.)

*Parental-benefit exception*

After reunification services have been terminated, the court sets a section 366.26 hearing " 'to select and implement a permanent plan for the child.' "  (*Caden C.*, *supra*, 11 Cal.5th at p. 630.)  The court has the options of adoption with termination of parental rights, guardianship, permanent relative care, or foster care.  (§ 366.26, subd. (b).)  There is a mandatory statutory preference for adoption.  (§ 366.26, subd. (b)(1); *San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 885, 888.)

The parental-benefit exception allows the court to choose an option other than adoption " 'in exceptional circumstances.' "  (*Caden C.*, *supra*, 11 Cal.5th at p. 631.)  It has three elements: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child."  (*Ibid.*; § 366.26, subd. (c)(1)(B)(i).)  The parent must establish these three elements by a preponderance of the evidence.  (*Caden C.*, at p. 629.)

We review for substantial evidence the first two elements—consistent visitation and benefit from continuing the relationship. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–640.) For the third element—detriment to the child if the relationship is terminated—we review for substantial evidence factual determinations such as "specific features of the child's relationship with the parent," "the harm that would come from losing those specific features," and "the benefit of adoption." (*Id.* at p. 640.) We review for abuse of discretion the "delicate balancing" of "the harm of losing the relationship against the benefits of placement in a new, adoptive home." (*Ibid.*) We presume the judgment is correct; the parent has the burden to affirmatively demonstrate error. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1161.)

### 1. *Visitation and contact*

Substantial evidence supports the juvenile court's finding that Mother met this first element.

### 2. *Beneficial relationship*

Regarding the second element, the focus is on whether " 'the child would benefit from continuing the relationship.' " (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) Relevant factors include " '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' " (*Ibid.*)

We conclude the court's finding here that a beneficial relationship was not established is supported by substantial evidence. When the section 366.26 hearing was held, H.R. was three years, five months old. Mother stated that when she had custody of H.R. during the first seven months of her life, they were "inseparable." After the first seven months of her life, H.R.

11

lived continuously with the relative caregivers.

During visits, H.R. was excited to see Mother and they were affectionate with each other. They sang, prayed, walked the dog, rode scooters, read books, played games, watched movies, and snuggled. Mother testified that H.R. "[a]bsolutely" enjoyed these activities. Mother testified she and H.R. had a deep bond and "a really healthy attachment to each other." But the juvenile court found "credibility issues" with Mother's testimony.

HSA described the visits as appropriate and enjoyable for Mother and H.R. But H.R. was also happy to return after visits to what she referred to as "home" with the caregivers. A social worker testified that after Mother's eviction and arrest, loud noises scared H.R., she had nightmares, and her toileting regressed.

H.R. referred to both Mother and her caregiver as "mom." She also referred to Mother as "other mother." The caregiver testified that after overnight visits with Mother, H.R. was angry, attacked her sisters and the caregiver, hurt the family dogs, and had night terrors. When visits were suspended for six weeks during Mother's incarceration, H.R. was happy and "very secure in herself," but when visits resumed, she became "really clingy" to the caregiver.

Mother admitted she put H.R.'s safety at risk by secretly allowing Father to have contact with H.R., including during overnight visits. She testified that her conduct leading to her arrest in January 2024 caused unsupervised overnight visits to change to supervised visits. She admitted that H.R. "expect[ed] the same routine" of visitation "every week," and the visitation changes negatively impacted her. Mother acknowledged that visits were suspended for six weeks when she was incarcerated

for methamphetamine use, and H.R. seemed "mad at" her when visits resumed. She admitted her dishonesty about contact with Father was detrimental to H.R. and did not put H.R.'s needs first.

This case is unlike *In re B.D.* (2021) 66 Cal.App.5th 1218, upon which Mother relies. It was unclear there whether the juvenile court based the termination of parental rights on improper factors, including the parents' failure to complete their reunification plans, because the court "did not have the benefit of the guidance provided in *Caden C.*," which was issued after the appeal was filed. (*Id.* at pp. 1228, 1230.) In contrast here, the juvenile court articulated and applied the *Caden C.* standards.

Mother contends the juvenile court erred by stating "the parent must show that she occupies a parental role in the child's life." But *Caden C.* does not prohibit consideration of whether the parent occupied a "parental role." (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 319–321 [finding that father had not occupied parental role was not error where court explained what it meant with evidence establishing beneficial relationship did not exist]; *In re A.L.*, *supra*, 73 Cal.App.5th at p. 1157 ["whether that parent has a parental role, is a relevant consideration" and *Caden C.* does not state otherwise].) The juvenile court here applied proper considerations when it concluded a beneficial relationship was not established.

*Detriment*

The juvenile court stated it was unnecessary to address the third prong because the second prong was not established. But Mother did not " 'show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed.' " (*In re G.H.* (2022) 84 Cal.App.5th 15, 25.)

13

" 'A showing the child derives *some benefit* from the relationship is not a sufficient ground to depart from the statutory preference for adoption.' " (*In re A.G.* (2020) 58 Cal.App.5th 973, 995.)  "Friendly or affectionate visits are not enough." (*In re G.H.*, *supra*, 84 Cal.App.5th at p. 25.)  To evaluate detriment, "courts need to determine . . . how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C.*, *supra*, 11 Cal.5th at p. 633.)  For example, "the effects might include emotional instability and preoccupation leading to acting out, difficulties in school, insomnia, anxiety, or depression." (*Ibid*.)  No evidence was presented here that any such harm would occur.

At the time of the section 366.26 hearing, H.R. had been living with the caregivers for all but the first seven months of her life.  Her sisters also lived with the caregivers, who were in the process of adopting them.  "A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination' " ' " such that " ' " 'no judge could reasonably have made the order.' " ' " (*Caden C.*, *supra*, 11 Cal.5th at p. 641.)  The juvenile court did not abuse its discretion when it determined that H.R.'s best interest was served by severing parental rights to provide a safe and stable home through adoption.

## DISPOSITION

The juvenile court's orders denying the petition to change the order denying a bonding study entered September 30, 2024, and terminating Mother's parental rights and selecting adoption

14

as the permanent plan, entered December 20, 2024, are affirmed. <u>NOT TO BE PUBLISHED</u>.


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Gilbert A. Romero, Judge

Superior Court County of Ventura

_____

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.